UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN W. CHILD, Plaintiff | **05 - 11814 NMG** | |
| | * | |
| | * | Case No. ____Sorotn___ MJ |
| v. | * | |
| | * | |
| | * | (Docketed at the Dukes |
| TITAN PROPANE LLC and | * | County Superior Court, |
| ADRIEN R. TURCOTTE, | * | Commonwealth of Mass., |
| Defendants | * | as DUCV2005-00029) |
| | * | |

RECEIPT # 66608
AMOUNT $250
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK. 70W
DATE 9/7/05

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendant Adrien R.

Turcotte files this notice to remove a civil action from the Superior Court

Department of the Trial Court, Dukes County, Commonwealth of Massachusetts,

to the United States District Court for the District of Massachusetts. In support of

this notice, defendant states:

> 1.)    Plaintiff John Child has commenced a civil action against
>
>        defendants Adrien R. Turcotte and Titan Propane LLC ("Titan
>
>        Propane") in the Superior Court Department of the Trial Court,
>
>        Dukes County, Commonwealth of Massachusetts.
>
> 2.)    Process was served on defendant Turcotte on August 4, 2005.
>
>        Turcotte became aware of the matter upon being served. Upon
>
>        information and belief, process was served on defendant Titan
>
>        Propane on August 5, 2005. Upon information and belief,
>
>        Titan Propane became aware of the matter upon being served.

3.)     Plaintiff's amended complaint consists of several tort counts (e.g., assault and battery and intentional infliction of emotional distress). Upon information and belief, plaintiff's civil action cover sheet indicates that he seeks $288,000 in damages.[1]

4.)     Plaintiff is a resident of the State of Massachusetts.

5.)     Defendant Turcotte is an individual and a resident of the State of Maryland.

6.)     Defendant Titan Propane is a foreign limited liability company, formed under the laws of the State of Delaware and with its principal place of business in the State of Kentucky.

7.)     Because this is a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, this court has subject matter jurisdiction over the dispute by reason of 28 U.S.C. § 1332. The action may be removed to this Court pursuant to 28 U.S.C. § 1441.

8.)     Copies of the process, pleadings, and other papers served upon the defendant are attached.

9.)     By filing this notice of removal, defendant does not waive any defense which may be available to it.

WHEREFORE, defendant respectfully gives notice that plaintiff's action filed in the Superior Court Department of the Trial Court, Dukes County,

---

[1] Upon information and belief, plaintiff filed his original complaint with the state court in May 2005. Turcotte was the only defendant named in the original complaint. The original complaint was not served on Turcotte and, upon information and belief, neither defendant became aware of the original complaint until after the amended complaint had been served on them. The civil action cover sheet referenced in paragraph three above was filed with the original complaint.

2

Commonwealth of Massachusetts, and docketed as DUCV2005-00029 has been

removed.

Respectfully submitted,
Adrien R. Turcotte,
By his attorneys,

Norman Holtz, BBO# 238880
HOLTZ & REED, LLC
25 New Chardon Street
Boston, MA 02114
Dated:  9/1/2006    (617) 720-0501

## CONSENT TO REMOVAL

Titan Propane LLC hereby consents to the removal of this action.

Titan Propane LLC,

Dated: 8/30/05

DAVID C. Riggan

## Certificate of Service

Undersigned certifies that a true copy of the above document was
served upon counsel for Plaintiff John W. Child, T. George Davis,
Jr., P.O. Box 1150, Vineyard Haven, MA 02568, by first-class mail,
postage prepaid.

Dated:
9/2/2005

3

(TO PLAINTIFF'S ATTORNEY:

PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER.)

COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.

DEPARTMENT OF THE TRAIL COURT
SUPERIOR COURT
CIVIL ACTION
No. **Ducv 2005 –
00029**

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

John W. Child _____ (Plaintiff(s)

Adrien R. Turcotte and Titan Propane LLC
d/b/a Vineyard Propane ____ (Defendant(s)

SERVICE COPY

SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon **T. George Davis, Jr.** plaintiff's
attorney, whose address is **P.O. Box 1150, Vineyard Haven, MA 02568**, an answer to the complaint
which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of
the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded
in the complaint. You are also required to file your answer to the compliant in the office of the Clerk of
this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you
may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** II, Esquire, at Edgartown, the **Second (2nd)** day of
**August** ____, in the year of our Lord two thousand           and **2005**

Clerk of Courts

NOTES.

1.   This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.   When more than one defendant is involved, the names of all defendants should appear in the
     caption. If a separate summons is used for each defendant, each should be addressed to the
     particular defendant.

COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. DUCV2005-00029

JOHN W. CHILD                                )
                                             )
                                             )
              Plaintiff                      )
                                             )
v.                                           )
                                             )
ADRIEN R. TURCOTTE and                       )
TITAN PROPANE LLC d/b/a VINEYARD             )
PROPANE                                      )
                                             )
              Defendants                     )

## AMENDED COMPLAINT

### INTRODUCTION

Plaintiff John W. Child hereby complains of the
Defendant Adrien Turcotte ("Turcotte") that Turcotte is
guilty of assault and battery, intentional infliction of
emotional distress, intentional interference with an
employment relationship, defamation, and malicious
prosecution, for which Plaintiff hereby seeks damages
pursuant to the applicable laws of the Commonwealth of
Massachusetts.

Plaintiff hereby complains of Defendant Titan Propane
LLC d/b/a Vineyard Propane ("Titan") that it is guilty of the
aforementioned malfeasance of Turcotte, under the doctrine of
respondeat superior, for which Plaintiff seeks damages
pursuant to the applicable laws of Massachusetts.

1

## PARTIES

1.   Plaintiff John W. Child is an adult resident of the
Commonwealth of Massachusetts, who resides at 17 Mariner
Road, P.O. Box 2187, Tisbury, Massachusetts 02568.

2.   Defendant Adrien R. Turcotte is an adult resident of the
State of Maryland, who resides at 101 Overlook Drive,
Apartment 3G, Salisbury, Maryland 21804.

3.   Defendant Titan Propane LLC d/b/a Vineyard Propane
("Vineyard Propane") is a limited liability company, with
headquarters located at 1700 S. Jefferson, Lebanon, MO 65536.
Prior to June 2005, Titan Propane operated under the name
Cornerstone Propane Partners, L.P. ("Cornerstone").

## GENERAL FACTS AND NATURE OF THE ACTION

4.   At all times relevant to this action, Vineyard Propane
was engaged in the business of marketing and distributing
propane to residential, commercial and other retail users on
Martha's Vineyard.  The operations of the company also
included sale, repair and maintenance of propane related
supplies, heating systems and appliances.

5.   Between 1992 and 2002, the Plaintiff was a regular,
full-time employee of Vineyard Propane, where he worked as a
propane gas installer and serviceman.

6.   Defendant Adrien Turcotte ("Turcotte") was employed
full-time as Vineyard Propane's Operations Manager between

2

1999 and 2002, during which time he served as the Plaintiff's immediate supervisor.

7.    Vineyard Propane compensated the Plaintiff for his employment, with weekly wages based on the number of hours worked, overtime compensation at the rate of 1.5 times his hourly rate for work in excess of forty (40) hours per week, and a comprehensive benefits package, including but not limited to a contributory retirement plan which Vineyard Propane matched dollar-for-dollar, paid vacation time, and a joint contributory health and hospitalization insurance plan that provided coverage for the Plaintiff and his wife.

8.    On Sunday, May 12, 2002, the Plaintiff was on duty to perform emergency services for Vineyard Propane customers, when he received an emergency call to inspect the gas service at the home of one such customer.  The Plaintiff was qualified to perform these services, as he was the holder of a Massachusetts Commercial Driver's License (CDL) (License No. S55559422), a Journeyman Plumber's License (License No. 23862), and a Plumbers and Gas Fitters License as a liquid propane gas installer (License No. 1073).  In addition, the Plaintiff was a licensed Oil Burner Technician (License No. BU 025876).

9.    In response to the emergency call, the Plaintiff immediately conducted an inspection at the customer's residence and determined that the gas system was dangerous to the residents, because of numerous plumbing and gas code violations, including but not limited to a leaking propane tank, inadequate and improperly installed ventilation, improperly sized piping, the absence of required safety

3

equipment, and the proximity of gas systems to electrical
services. The Plaintiff informed the customer of the danger,
and shut off the gas service at the tank as a precautionary
measure. The Plaintiff then advised the resident to call
Vineyard Propane during normal business hours the following
day and have the appropriate repairs made, to bring the
system into gas and plumbing code compliance before turning
the gas service back on.

10. On Monday, May 13, 2002, during his regular hours of
employment, the Plaintiff was summoned to meet with Turcotte
in his office. When the Plaintiff arrived at Turcotte's
office, however, the Defendant was not there, and the
Plaintiff was instructed to return the following morning.

11. On the morning of Tuesday, May 14, 2002, the Plaintiff
met with Turcotte in Turcotte's office. During the course of
this meeting, Turcotte suspended the Plaintiff indefinitely
without pay, effective immediately, allegedly for
"inconveniencing" the Vineyard Propane customer on May 12,
2002. Although the Plaintiff disagreed with Turcotte's
assessment of the appropriate course of action in response to
the safety issues discovered during the May 12, 2002
emergency call, and he disagreed with the propriety of
Turcotte suspending him without pay under those
circumstances, the Plaintiff did nothing during this meeting
to incite or provoke Turcotte to violence. (Upon information
and belief, Turcotte subsequently caused the customer's
service to be restored without the requisite repairs being
made. Turcotte was unqualified to make any such
determination, however, as he was neither a licensed
journeyman plumber nor a licensed LP gas installer.

4

Moreover, upon information and belief, Turcotte did not have
a licensed journeyman plumber or licensed LP gas installer
inspect or correct the reported problem before restoring the
customer's service.)

12.   At the conclusion of the meeting, the Plaintiff left
Turcotte's office and went directly to the Vineyard Propane
parking lot adjacent to the building, to retrieve his
personal effects from the company van.  Soon after the
Plaintiff entered the van to collect his things, Turcotte
appeared and began beating his fists against the van window
and pulling the driver's side door handle.  As a result of
Turcotte's actions and demeanor, the Plaintiff became
concerned for his personal safety and did not want this
spectacle viewed by his fellow workers, so he moved the van
to the rear of the building and parked it there.

13.   Turcotte followed the Plaintiff as he drove a short
distance to the rear of the building.  As Turcotte approached
the van again, the Plaintiff opened the door, whereupon
Turcotte immediately grabbed him by his clothing, dragged him
from the vehicle and began striking him in the face with his
closed fist.  After punching the Plaintiff several times,
Turcotte then took the radio the Plaintiff was holding in his
hand and used it as a weapon to further strike the Plaintiff
in the face.  At some point during this portion of the
attack, Turcotte broke the Plaintiff's eyeglasses.

14.   Continuing the attack, Turcotte then knocked the
Plaintiff to the ground and began kicking and hitting him.
Finally, the Plaintiff was able to escape, and he returned to
the building.  As he did, Turcotte pursued him, in an effort

5

to continue the attack.  However, upon information and
belief, Turcotte was restrained by a third party from doing
so, near the entrance to the building.

15.  Turcotte's attack on the Plaintiff was done with malice,
in that it was intentional, wrongful, without just cause or
excuse, and with an intent to inflict injury.

16.  Once inside the building, the Plaintiff immediately
placed an emergency 911 telephone call and requested that a
police officer and an ambulance be sent to the scene.

17.  The Plaintiff was transported by ambulance to the
Martha's Vineyard Hospital Emergency Room on the morning of
May 14, 2002, where he was diagnosed with facial trauma,
contusions of the nose and forehead, and a concussion, as a
result of the attack.

18.  Shortly after his attack on the Plaintiff, Turcotte
concocted and published an utterly false version of events.
In that regard, Turcotte knowingly filed false reports with
the Edgartown Police Department and with Cornerstone's Human
Resources Division, in which he alleged as follows:  that it
was the Plaintiff, and not he, who was the aggressor; that
the Plaintiff drove the company van in such a way as to
strike Turcotte and had attempted to run over him; that the
Plaintiff then repeatedly struck Turcotte with his fists; and
that Turcotte struck the Plaintiff only in self-defense.  (A
copy of the Defendant's May 14, 2002 written statement
submitted to Cornerstone's Human Resources Division is
attached hereto as Exhibit A.)

19. At the time that he made these statements, Turcotte knew them to be complete fabrications, designed to impugn the Plaintiff's character and reputation.

20. By letter dated May 17, 2002 and received on May 21, 2002, the Plaintiff was notified by Cornerstone, through its Director of Human Services, that he was discharged from employment, effective May 14, 2002. The reasons given for the discharge were that the Plaintiff had allegedly been insubordinate and that he had allegedly assaulted his supervisor (i.e., Turcotte). (A copy of the May 17, 2002 Cornerstone letter is attached hereto as Exhibit B.) Significantly, however, neither the Cornerstone Director of Human Services nor anyone else in Cornerstone management had made any effort whatsoever to contact the Plaintiff and obtain his version of the incident, but rather had relied solely only Turcotte's malicious fabrications.

21. On May 15, 2002, the Edgartown Police served the Plaintiff with a M.G.L. c. 266, § 120 "no trespass" notice, stating that the Plaintiff was no longer allowed to physically enter the Vineyard Propane property, and that he would be arrested and/or prosecuted for trespassing if he were to violate the notice. Upon information and belief, this "no trespass" notice was generated by, or at the behest of, Turcotte. To date, the "no trespass" notice has not been cancelled, and it remains in effect to this day.

22. On or about May 14, 2002, the respective parties each made application to bring a criminal complaint for M.G.L. c. 265 § 13 assault and battery against the other in the Edgartown District Court. In that regard, on July 28, 2002,

7

the Clerk Magistrate of the Dukes County District Court held
a probable cause hearing, in which he heard testimony from
the parties, the Edgartown Police, and other witnesses with
respect to both applications for criminal complaints.
Following all evidence offered, the Clerk Magistrate found
that there was probable cause to believe Adrien Turcotte had
committed an assault and battery on the Plaintiff, but that
there was not probable cause to believe the Plaintiff had
committed any alleged crime. Accordingly, the Court issued a
complaint against the Defendant (Edgartown District Court
Docket No. 0235CR0387), and dropped the case against the
Plaintiff altogether.

23. On September 12, 2002, the criminal complaint against
Adrien Turcotte was disposed of when he admitted in open
court to sufficient facts to find him guilty of M.G.L. c.
265, § 13 assault and battery on the Plaintiff. The Court
accepted Turcotte's admission of sufficient facts and
continued the case without a finding for a period of one year
upon the payment of certain court costs. (A copy of the
docket entry and Turcotte's plea agreement are attached
hereto as Exhibit C.)

24. The Plaintiff tried diligently to obtain other
employment, but was unable to find anything remotely
comparable to his Vineyard Propane position for a period of
28 months after his termination. As a result, the Plaintiff
remained unemployed in any full-time capacity until September
2004, when he was hired by the Town of Tisbury Public Works
Department to work as a general tradesman. However, the
Plaintiff's wage rate at this new job is roughly one-third

8

lower (i.e., $6.00/hour lower) than his wage rate at Vineyard Propane in May 2002.

25.   The Plaintiff's losses as a result of the assault and battery, the wrongful termination, and the application filed by Turcotte for a criminal complaint against the Plaintiff without just cause or excuse and with an intent to inflict injury, include, but are not limited to, physical injury, out-of-pocket medical expenses, lost wages, lost employment benefits (including health insurance, retirement, and use of a company car), lost personal items (i.e., the Plaintiff's personal tools which were wrongfully confiscated by Vineyard Propane and never returned to him after his termination), damage to reputation, and emotional trauma manifested by depression, insomnia, loss of self-esteem, post traumatic stress syndrome, and other chronic symptoms.

26.   On or about June 3, 2004, Cornerstone filed a chapter 11 bankruptcy petition and a plan of reorganization in the U.S. Bankruptcy Court for the Southern District of New York.   On or about December 20, 2004, Cornerstone emerged from chapter 11 bankruptcy protection and shortly thereafter changed its name to Titan Propane LLC.


## COUNT I

### Assault and Battery

27.   Plaintiff realleges the allegations contained in paragraphs 1 through 26.

9

28.  On May 14, 2002, the Defendant made a willful threat or
attempt to inflict injury upon the Plaintiff, coupled with an
apparent present ability to do so, when he approached the van
in which the Plaintiff was sitting and began striking it with
his fists and pulling on the door handle.

29.  The Defendant made another such willful threat or
attempt to inflict injury upon the Plaintiff, when he
accosted the Plaintiff a second time in the Vineyard Propane
rear parking lot.

30.  The Defendant made a third willful threat or attempt to
inflict injury upon the Plaintiff, when he followed the
Plaintiff into the Vineyard Propane office building with the
apparent purpose of physically attacking him, as the
Plaintiff sought to flee the Vineyard Propane rear parking
lot.

31.  The Defendant committed an unlawful touching of the
Plaintiff on May 14, 2002, without justification or excuse,
when he grabbed the Plaintiff and pulled him from the van,
struck the Plaintiff repeatedly in the face with his closed
fist, struck him in the face with a radio, knocked him to the
ground, and then struck and kicked him while he was on the
ground.

32.  The Defendant admitted in open court to sufficient facts
to find him guilty of M.G.L. c. 265, § 13 assault and battery
on the Plaintiff on May 14, 2002, as part of the Defendant's
disposition in Commonwealth v. Adrien Turcotte (Docket No.
0235CR0387).  The Court accepted the Defendant's admission of

10

sufficient facts and continued the case without a finding for a period of one year upon the payment of certain court costs.

33.  The Plaintiff has been injured as a result of the actions and conduct of the Defendant.

## COUNT II

### Intentional or Reckless Infliction of Emotional Distress

34.  Plaintiff realleges the allegations contained in paragraphs 1 through 33.

35.  The specific elements that must be proved to establish a claim for intentional infliction of emotional distress are (a) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, (b) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (c) the actions of the defendant were the cause of the plaintiff's distress, and (d) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.  Tetrault et al. v. Mahoney, Hawkes & Goldings et al., 425 Mass. 456, 466 (1997).

36.  The Defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, when he physically and brutally attacked the Plaintiff, who was his subordinate at Vineyard

11

Propane, without warning, provocation or justification on May 14, 2002.

37. The Defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, when he filed a false report with Cornerstone Human Resource Division on the circumstances relating to his altercation with the Plaintiff, in an effort to escape culpability for his own malfeasance, and to shift culpability to the Plaintiff and have his employment terminated.

38. The Defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, when he filed a false report with the Edgartown Police on the circumstances relating to his altercation with the Plaintiff, in his effort to escape culpability for his own malfeasance, and to initiate criminal proceedings on his groundless charge lodged against the Plaintiff.

39. The Defendant's actions were extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

40. As a result of the actions of the Defendant, the Plaintiff suffered severe emotional distress of such a nature that no reasonable person could be expected to endure it.

41. The Plaintiff has been injured as a result of the actions and conduct of the Defendant.

## COUNT III

### Intentional Interference with an
### Employment Relationship

42. Plaintiff realleges the allegations contained in paragraphs 1 through 41.

43. The specific elements that must be proved in order to establish a claim of intentional interference with an employment relationship are (a) an advantageous employment relationship; (b) the defendant's knowledge of such relationship; (c) the defendant's interference, in addition to being intentional, was improper in motive or means; and (d) the plaintiff suffered economic harm as a result of the defendant's conduct. Ayash v. Dana-Farber Cancer Institute et al., 443 Mass. 367, 394-95 (2005).

44. The Plaintiff enjoyed an advantageous employment relationship with Vineyard Propane for approximately 10 years prior to May 14, 2002.

45. In his capacity as the Plaintiff's immediate supervisor at Vineyard Propane, the Defendant had knowledge of the Plaintiff's employment relationship with Vineyard Propane.

46. The Defendant interfered with the Plaintiff's employment relationship with Vineyard Propane, by propounding false allegations that the Plaintiff physically attacked him, by tendering these false allegations to Cornerstone's Human Resources Division, and by his other affirmative efforts to have Cornerstone terminate its employment relationship with the Plaintiff. As a direct result of the Defendant's

13

efforts, Cornerstone did in fact terminate its employment
relationship with the Plaintiff, effective May 14, 2002.

47. The Defendant's interference with this employment
relationship was intentional.

48. The Defendant's interference with this employment
relationship was improper in motive or means, in that he
acted out of malevolence and/or actual malice (i.e., for a
spiteful malignant purpose unrelated to a legitimate
corporate interest).

49. The Plaintiff has been injured as a result of the
actions and conduct of the Defendant.


## COUNT IV

### Defamation

50. Plaintiff realleges the allegations contained in
paragraphs 1 through 49.

51. The specific elements which must be proved in order to
establish a claim of defamation are (a) a statement by the
Defendant concerning the Plaintiff; (b) the statement could
damage the Plaintiff's reputation in the community, (c) the
Defendant was at fault for making the statement, and (d) the
statement either caused the Plaintiff economic loss or is
actionable without proof of economic loss. Ravnikar v.
Bogojavlensky, 438 Mass. 627, 629-30 (2003). Statements that
are actionable without proof of economic loss include
statements that constitute libel, statements that charge the

14

Plaintiff with a crime, and statements that may prejudice the plaintiff's profession or business. Id. If the statement comes within one of these exceptions, a plaintiff may recover noneconomic losses, including emotional injury and damage to reputation. Id.

52. At various points on and after May 14, 2002, the Defendant made untruthful, verbal and written statements about the Plaintiff, alleging that the Plaintiff physically attacked him with a motor vehicle and his fists. The Defendant made these untruthful statements to Cornerstone's Human Resources Division, the Edgartown Police Department and others.

53. The Defendant's statements damaged the Plaintiff's reputation, by lowering him in the estimation of the community and by deterring third persons from associating or dealing with him.

54. The Defendant knew that these statements were false at the time that he made them, and he was thereby at fault for his intentional, tortious acts.

55. The statements caused the Plaintiff economic loss, as (a) Cornerstone terminated the Plaintiff's 10-year employment as a direct result of the Defendant's statements; (b) the Plaintiff was unable to find comparable work in the community as a result of the Defendant's besmirchment of his reputation; and (c) the employment that the Plaintiff ultimately obtained after his protracted, albeit unsuccessful, search was at roughly a one-third reduction in wage rate, compared to his Cornerstone wage rate.

15

56. Certain of the Defendant's defamatory statements about the Plaintiff were libelous, as they expressed in writing (e.g., the false and defamatory written statement the Defendant submitted to Cornerstone).

57. Certain of the Defendant's defamatory statements charged the Plaintiff with a crime (e.g., the false statements made by the Defendant to the Edgartown Police, pursuant to which the Defendant made application for an assault and battery criminal complaint to issue against the Plaintiff).

58. The statements by the Defendant prejudiced the Plaintiff's business and/or profession, as they alleged that the Plaintiff had (a) committed a violent intentional tort, (b) against his Vineyard Propane supervisor, (c) in the work place during business hours, and (d) without provocation or justification.

59. The Plaintiff has been injured as a result of the actions and conduct of the Defendant, including economic loss, emotional injury and damage to reputation.

## COUNT V

### Malicious Prosecution

60. Plaintiff realleges the allegations contained in paragraphs 1 through 59.

61. To establish a claim of malicious prosecution, the Plaintiff must prove that the Defendant instituted criminal

16

proceedings against him with malice and without probable
cause, and that the proceedings terminated in the plaintiff's
favor.  E.g., Foley et al. v. Polaroid Corporation, 400 Mass.
82, 100 (1987).

62.  On May 14, 2002, the Defendant filed charges with the
Edgartown Police Department, alleging that the Plaintiff had
physically attacked him, and seeking the issuance of a
criminal complaint against the Plaintiff.

63.  The Defendant's motive in instituting this criminal
proceeding against John Child was malicious, in that it was
intentional, wrongful, without just cause or excuse, and with
an intent to inflict injury, as he was fully aware that the
Plaintiff had not committed the alleged crime.

64.  At the time that the Defendant instituted the criminal
proceeding against the Plaintiff, he was fully aware that the
Plaintiff had not committed the crime alleged, and that there
was no probable cause to believe that the Plaintiff had done
so.

65.  On July 28, 2002, the Clerk-Magistrate of the Edgartown
District Court dropped the charges against the Plaintiff
without issuing a criminal complaint, due to lack of probable
cause to believe the Plaintiff had committed a crime.

66.  By the actions and conduct of the Defendant, John Child
has been injured.

17

## COUNT VI

### Respondeat Superior

67.   Plaintiff realleges the allegations contained in
paragraphs 1 through 66.

68.   Adrien Turcotte was employed by Vineyard Propane between
1999 and 2002 as its Operations Manager, during which time he
served as the Plaintiff's immediate supervisor.

69.   Each and every tort alleged in this action to have been
committed by Defendant Adrien Turcotte against the Plaintiff
occurred during the course of, and within the scope of,
Defendant's employment by Vineyard Propane.

70.   The Plaintiff has been injured as a result of the
actions and conduct of Vineyard Propane, or alternatively as
a result of Vineyard Propane's failure to act, which injuries
include physical injury, economic loss, emotional injury and
damage to reputation.


WHEREFORE, the Plaintiff prays this Court the following
relief:

(1)   Enter judgment for the Plaintiff on all Counts of his
      Verified Complaint.

(2)   Enter judgment against the Defendants for compensatory
      damages, designed to give the Plaintiff what he
      suffered in loss of compensation, medical bills, and
      pain and suffering.

18

(3)  Enter judgment against the Defendants for
     consequential damages.

(4)  Enter judgment against the Defendants for exemplary or
     punitive damages, due to malice.

(5)  Award Plaintiff interest and cost of this litigation,
     including reasonable attorney's fees; and

(6)  Award such other and further relief as this Court
     deems just and equitable.

                              JOHN W. CHILD
                              By his Attorney,

                              _____
                              T. George Davis, Jr.  (BBO# 646667)
                              P.O. Box 1150
                              Vineyard Haven, MA    02568
                              Tel. (508) 693-8820

Dated:  August 2, 2005

19

CERTIFICATE OF SERVICE


I hereby certify that the above document is being served within the time required by Superior Court Standing Order No. 1-88 or by leave of the Regional Administrative Justice.

T. George Davis, Jr.

20

05/14/2002  15:30    1588693    DANIELE & RUGE    PAGE    03

-- CORNERSTONE PROPANE PARTNERS --

## MANAGER OCCURRENCE REPORT

(Fax no 417-680-3400) 537-2579)

Call the Risk Management Dept. at the Lebanon Support Office if assistance is needed. IMMEDIATE investigation and reporting required.
Refer to Accident Reporting Policy for further details.

| Identify Type of Occurrence | Occurrence |
|---|---|
| ☐ EMPLOYEE INJURY - Report to Carrier also (according to policy) | Date: 5/14/02 |
| ☐ VEHICULAR - Attach Driver Report of Vehicle Occurrence | Time: 9:00 |
| ☐ GENERAL LIABILITY - Attach Employee Statement of Occurrence | Service Center Name Including City: Vineyard Propane |
| ☐ COMPANY PROPERTY - Forward any applicable Police reports | Service Center four digit Code: 7564 |

1. Has this occurrence been reported to the Risk Management Dept.? Yes ☒ No ☐    If yes, to whom was report given and date. Susan Wood

2. Location of occurrence (include number, street, city, state): Vineyard Propane, 7 Northline Rd. Edgartown, MA 02539 - Dukes
County: Dukes

3. How did you learn of the occurrence? (Employee, witness, third party, from injured, etc.)

4. Investigated by civil authority? Yes ☒ No ☐    Agency Name: Edgartown Police Dept.    Investigating Officer:

5. Immediate Drug Screen Yes ☒ No ☐    5. a) Document reasons if drug screen not done:

6. Employee Involved:  First Name: Adrien  Middle: John Chirl  Last: Turcotte - See attached    Male/Female

7. Home Address: Street    City    State    Zip Code    Home Phone #:

8. Date of Birth: 4/30/63    Date Hired:    Social Security Number: 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    Job Title: MANAGER

9. Did injured leave work? Yes ☐ No ☐    Did injured return to work? Yes ☐ No ☐    Hour: ___ AM/PM    Hour: ___ AM/PM

10. Was first aid administered? Yes ☐ No ☐    By whom?    Hospitalized? Yes ☐ No ☐

INJURIES OR PROPERTY DAMAGE TO OTHERS

11. Name:    See attached

12. Address: Street    City    State    Zip Code    Phone #:

13. Describe injuries or property damaged:

**MANAGER INVESTIGATION RESULTS:**

14. a) Provide your description of ALL DETAILS on how the occurrence occurred, the extent of injuries, damage or loss. Identify other persons or companies involved. Attach additional pages if necessary. Be clear and specific.

See attached

b) Estimated cost of damages: $

c) What did the employee do or fail to do that contributed to the occurrence/accident?

d) What actions have or will be taken to prevent recurrence? (i.e., verbal or written counseling, safety training, installing safety devices, using proper safety equipment, additional training in proper procedures, repair, etc.). Include date these actions will take place.
Action    Date

15. Witness(es) Name:    Address    Daytime Telephone ( )

Report completed by:    Date:    Telephone:

EXHIBIT
A-1

On May 14 , 2002 at approximately 8:15 AM, John Child came into my office. I requested to speak with him regarding a customer complaint in reference to John's demeanor while conducting a service call over the weekend. When he arrived at my office in the Daniele & Rogers building, I requested that my Office Manager be present during the conversation.

I started by asking John if he remembered going on a service call at the Carroll residence in Oak Bluffs on Saturday. He said he did. I asked him several questions regarding Mrs. Carroll's complaint. He denied all of the allegations. At this time I informed John that his employment with the company is herby suspended until a complete review of the incident in question is conducted. I also asked him for his pager, keys to the buildings and company vehicle.

It was then that John smiled at me, gave me a "thumbs up" gesture and walked out of my office. I called his name several times and said I need the keys etc. John left the building and walked across the street to Vineyard Propane. Not sure what his state of mind or intentions were I followed. I could see that his company vehicle was parked in the rear parking area and he was walking toward it. I proceeded across the street asking John to wait for me; as he was approximately fifty feet ahead of me. He ignored me and kept walking. He approached the company vehicle and opened the driver's door and got in the truck. As he was doing this I told him that he was not authorized to take the company vehicle and not to take it. At this point I was still walking toward the vehicle and was approximately three fourths of the way along side of the Vineyard Propane building (see drawing) and approximately twenty feet from the truck.

John started the truck, looked at me and smiled, placed the vehicle in gear, stepped on the accelerator and steered the truck directly at me and continued to accelerate. I tried to get out of the way however due to the area I was standing there was nowhere for me to go. John then struck me with the truck. As he approached I tried to get as close to the building as possible. I put my arms up to protect my head and facial area, as I knew I would be struck by the driver's side mirror. As a result my right arm and elbow were struck by the driver's side mirror causing damage to the truck. As I rolled, the right side of my lower back struck the door handle. I had lost my balance and held onto the mirror assembly in an attempt to keep my feet and legs from becoming caught under the vehicle. During this time I was yelling at John to stop, but he refused. John continued to drive the truck as close to the building as possible while "pinning" me between the building and the truck during the entire length of the building, which is approximately sixty feet in length. When John reached the end of the building and the front parking area he stopped the truck.

I told John several times that I was going to call the police. I also motioned to Lynn Daniels who was standing in the front office to come outside, as I wanted her to call the police department. It was unclear as to what he may do with the vehicle and my concern for others safety I remained outside. At that time John placed the truck in gear again and drove to the rear parking area. I walked to the rear lot and he stopped and exited the truck. He walked directly toward me in an aggressive nature. I noticed that he was carrying the company cell phone in his hand. As he approached me I told him I was calling the police and reached for the cell phone.

John pulled away then struck me in the left side of my face with his fist. At this point I started walking backward to get away from him. He continued to advance on me and swing. He stuck me in the face several times and head. In an effort to protect myself from his advancements, I responded in self-defense and struck him to slow him down. He continued to strike me while I was trying to hold him down and get the attention of some of the employees that were inside the building. John then went inside the building, as did I and called the authorities.

EXHIBIT
A-2



| CRIMINAL DOCKET | 023█R000387 | ATTORNEY | hoshi |
|---|---|---|---|

**COURT DIVISION**
Edgartown

☐ INTERPRETER REQUIRED

**DATE and JUDGE**

**DOCKET ENTRY**
☐ Attorney appointed (S.JC R. 3:10)
☐ Atty denied and Deft Advised per 211D §2A
☐ Waiver of counsel found after colloquy

**NAME, ADDRESS AND ZIP CODE OF DEFENDANT**
TURCOTTE, ADRIEN
PO BOX 729
VINEYARD HAVEN, MA 02568

**Terms of release set:**
☐ PR  ☐ Bail:
☐ Held (276 §58A)
☐ See back for special conditions

**Arraigned and advised:**
☐ Potential of bail revocation (276 §58)
☐ Right to bail review (276 §58)
☐ Right to drug exam (111E §10)

**DEFT. DOB and SEX**
04/30/1963      M

**DATE OF OFFENSE(S)**
05/14/2002

**PLACE OF OFFENSE(S)**
EDGARTOWN

9.12.02
Macy

**Advised of right to jury trial:**
☐ Does not waive
☐ Waiver of jury trial found after colloquy

**COMPLAINANT**

**POLICE DEPARTMENT (if applicable)**
EDGARTOWN PD

**Advised of trial rights as pro se (Supp. R. 4)**

**DATE OF COMPLAINT**
05/29/2002

**RETURN DATE AND TIME**
06/28/2002 08:30:00

**Advised of right of appeal to Appeals Ct (R. 28)**

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| 1. 265/13A/B  A&B c265 §13A | | | | | 50 ☐ WAIVED |

**DISPOSITION DATE and JUDGE**
9-12-02    Macy

**SENTENCE OR OTHER DISPOSITION**
☑ Sufficient facts found but continued without guilty finding until:  9-16-03
☐ Probation      ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon:  ☐ Request of Comm.    ☐ Request of Victim
☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:
☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)

**DISPOSITION METHOD**
☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | | DATE |
|---|---|---|

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation      ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon:  ☐ Request of Comm.    ☐ Request of Victim
☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:
☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | | DATE |
|---|---|---|

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation      ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon:  ☐ Request of Comm.    ☐ Request of Victim
☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:
☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | | DATE |
|---|---|---|

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation      ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon:  ☐ Request of Comm.    ☐ Request of Victim
☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:
☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)

True Copy Attest
Thomas A. Teller
Clerk-Magistrate

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | | DATE |
|---|---|---|

**ADDITIONAL**

A TRUE COPY  Y    CLERK-MAGISTRATE/ASST. CLERK    ON (DATE)

**COURT ADDRESS**
Edgartown District Court
81 Main Street
P.O. Box 1284 Edgartown, MA 02539

**EXHIBIT**
C-1

| TENDER OF PLEA OR ADMISSION WAIVER OF RIGHTS | DOCKET NO. CA-387 | NO. OF COUNTS 1 | Trial Court of Massachusetts District Court Department |
|---|---|---|---|

| INSTRUCTIONS: This form must be typed or printed clearly, completed prior to the Pretrial Hearing, signed by both counsel and submitted to the court by the defendant at or before the Pretrial Hearing. | NAME OF DEFENDANT Adrien Turcotte | COURT DIVISION Edgartown District Court Main St. - P.O. Box 1284 Edgartown, MA 02539 |
|---|---|---|

## SECTION I     TENDER OF PLEA

Defendant in this case hereby tenders the following:   ☐ PLEA OF GUILTY   ☒ ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GUILT conditioned on the dispositional terms indicated below. *Include all proposed terms (guilty finding, finding of sufficient facts, continued without fi dismissal, fine, costs, probation period and supervision terms, restitution amount including the identification of the recipient of restitution, an sentence of incarceration, split sentence or suspended sentence, etc.). Number each count and specify terms for each count separately.*

| COUNT NO. | DEFENDANT'S DISPOSITIONAL TERMS (Check "Yes" if Prosecution agrees – Check "No" if Prosecution disagrees) | | PROSECUTOR'S RECOMMENDATION (Required if Prosecutor disagrees with terms) |
|---|---|---|---|
| 1 | CWOF 1year - Admin. Probation $200 cc  $50 vw f | ☒ YES ☐ NO | Trichster Probation |
| | To be dismissed at end of 1year | ☐ YES ☐ NO | |
| | | ☐ YES ☐ NO | |
| | | ☐ YES ☐ NO | |
| | | ☐ YES ☐ NO | |
| | | ☐ YES ☐ NO | |

WE HAVE CONSULTED WITH THE PROBATION DEPARTMENT REGARDING ANY PROBATION TERMS SET FORTH ABOVE.

| SIGNATURE OF DEFENSE COUNSEL X | DATE 9/12/02 | SIGNATURE OF PROSECUTING OFFICER | DATE 9-12- |
|---|---|---|---|

## SECTION II     PLEA OR ADMISSION ACCEPTED BY THE COURT

The Court ☒ ACCEPTS the tendered Plea or Admission on defendant's terms set forth in Section I, and will impose sentence in accord with said terms, subject to submission of defendant's written WAIVER (see Section IV on reverse of this form), completion of the required COLLOQUY, a determination that there is a FACTUAL BASIS for the Plea or Admission, and notice of ALIEN RIGHTS.

## SECTION III     PLEA OR ADMISSION REJECTED BY THE COURT

The Court ☐ REJECTS the defendant's dispositional terms set forth above and, in accordance with Mass. R. Crim. P. 12(c)(6), has set forth to the defendant the dispositional terms it would find acceptable, to wit:

DEFENDANT'S DECISION IF COURT REJECTS TENDE PLEA OR ADMISSION:

☐ Defendant WITHDRAWS the tendered Plea or Admis the parties must complete and file a Pretrial Confer Report, a Pretrial Hearing must be conducted and a date scheduled, if necessary.

☐ Defendant ACCEPTS terms set forth by the Court, a Pl Admission will be accepted by the court and dispositional terms imposed, subject to submissio defendant's written WAIVER (see Section IV on rever this form), completion of the required oral COLLOQU determination that there is a FACTUAL BASIS or Admission, and notice of ALIEN RIGHTS.

Clerk /Ass

| SIGNATURE OF JUDGE ACCEPTING OR REJECTING PLEA OR ADMISSION | DATE | SIGNATURE OF DEFENSE COUNSEL (if re |
|---|---|---|

**EXHIBIT C-2**

**SECTION V      DEFENDANT'S WAIVER OF RIGHTS (G.L. c. 263, §6) & TRIAL RIGHTS NOTICE (G.L. c. 278, § 29D)**

I, the undersigned defendant, understand and acknowledge that I am voluntarily giving up the right to be tried by jury or a judge without a jury on these charges.

I have discussed my constitutional and other rights with my attorney. I understand that the jury would consist of jurors chosen at random from the community, and that I could participate in selecting those jurors, who would determine unanimously whether I was guilty or not guilty. I understand that by entering my plea of guilty or admission, I will also giving up my right to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to testify or provide evidence against myself by asserting my privilege against self-incrimination; all with the assistance of my defense attorney; and to be presumed innocent until proven guilty by the prosecution beyond reasonable doubt.

I am aware of the nature and elements of the charge or charges to which I am entering my guilty plea or admission and am also aware of the nature and range of the possible sentence or sentences.

My guilty plea or admission is not the result of force or threats. It is not the result of assurances or promises, other than any agreed-upon recommendation by the prosecution, as set forth in Section I of this form. I have decided to plead guilty, admit to sufficient facts, voluntarily and freely.

I am not now under the influence of any drug, medication, liquor or other substance that would impair my ability to fully understand the constitutional and statutory rights that I am waiving when I plead guilty, or admit to sufficient facts to support a finding of guilty.

I understand that if I am not a citizen of the United States, conviction of this offense may have the consequences deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF DEFENDANT | DATE |
|---|---|
| X | 9-12-02 |

**SECTION VI   CERTIFICATE OF DEFENSE COUNSEL**

As required by G.L. c. 218, § 26A, I certify that as legal counsel to the defendant in this case, I have explained to defendant the above-stated provisions of law regarding the defendant's waiver of jury trial and other rights and the defendant to tender his or her plea of guilty or admission knowingly, intelligently and voluntarily.

| SIGNATURE OF DEFENSE COUNSEL | B.B.O. NO. | DATE |
|---|---|---|
| X | 639569 | 9/12/02 |

**SECTION VII   CERTIFICATE OF JUDGE**

I, the undersigned Justice of the District Court, addressed the defendant directly in open court. I made appropriate inquiry into the education and background of the defendant and am satisfied that he or she fully understands all of his or rights as set forth in Section IV of this form, and that he or she is not under the influence of any drug, medication, liquor other substance that would impair his or her ability to fully understand those rights. I find, after an oral colloquy with the defendant, that the defendant has knowingly, intelligently and voluntarily waived all of his or her rights as explained during these proceedings and as set forth in this form.

After a hearing, I have found a factual basis for the charge(s) to which the defendant is pleading guilty or admitting. I have found that the facts as related by the prosecution and admits by the defendant would support a conviction on the charges to which the plea or admission is made.

I further certify that the defendant was informed and advised that if he or she is not a citizen of the United States, a conviction of the offense with which he or she was charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF JUDGE | DATE |
|---|---|
| X | |

**EXHIBIT**

C-3

CornerSt⊕ne Propane

May 17, 2002

Mr. John Child
17 Mariner Rd
Vineyard Haven, MA 02568

Dear Mr. Child:

On May 14, 2002, you were placed on suspension pending an investigation into a complaint made against you by one of our customers. Your insubordination towards your manager when he requested that you return all company keys, cell phone, and other company property while on suspension is unacceptable. Your behavior in operating a company vehicle following your suspension and after being told not to do so, as well as the resulting intentional property damage you caused to the vehicle, also are clear violations of the company's standards of conduct.

Cornerstone Propane does not tolerate and will not tolerate the type of conduct you exhibited on May 14. Therefore, the decision has been made to terminate your employment effective May 14, 2002.

Sincerely,

*Danny Fuller, by DT*

Danny J. Fuller
Director of Human Resources
CornerStone Propane

DJF/dlt

EXHIBIT

B

35   11:13am   P. 001

520 COMMERCE ST
SALISBURY MD 21801
410-749-4147 – PHONE
443-260-1538 – FAX  OR 443-260-1539 FAX

**SHARP ENERGY**

# Fax

| | |
|---|---|
| **To:** Norman Holtz | **From:** Adrien Turcotte |
| **Fax:** (617-720-0502 | **Pages:** 20 including other |
| **Phone:** 617-720-0501 | **Date:** 8-12-05 |
| **Re:** Turcotte /Child | **CC:** |

☐ Urgent   ☑ **For Review**   ☐ **Per your request**   ☐ **Please Reply**

Norman –

Attached are several documents
I have retained in regards to the
case at hand. Hopefully they can give
you an idea of the incident.

# MATERIAL and LABOR RECORD

| JOB NAME | | | DATE |
|---|---|---|---|
| MIKE CARROLL | | | 5/11/01 |

**JOB LOCATION**
#2 OB 3 - 5945

| QTY. | DESCRIPTION OF MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| | shut off hse. | | |
| | lady call | | |
| | gas smell at | | |
| | tank. | | |
| | She had called | | |
| | before about stove | | |
| | pop - etc. | | |
| 4' | 3/8 tubing to stove | | |
| 25' | 1/2 cop - to an demark | | |
| | Hw H. need to be | | |
| | 3/4" not vented | | |
| | more than 2' also | | |
| | next to wood | | |
| | shower wall | | |
| | unsafe - | | |
| | also she wants | | |
| | press test on ug line | | |
| | + other hse etc | | |
| | | | |

| LABOR RECORD | HOURS | RATE | AMOUNT |
|---|---|---|---|
| **MECHANICS** clil | 1.5 | 07 | |
| | | | |
| **HELPERS** | | | |
| | | | |
| | | | |
| | | | |
| SIGNED | | **TOTAL** | |

PRODUCT 230

Then, I opened the door and Mr. Turcotte dragged me out of the
vehicle and punched me several times in the face. He took the
radio out of my hand and used it as a weapon to further hit me in
the face. He broke my glasses. He pushed me to the ground and
began kicking me and hitting me. I thought, "I'm 56 years old.
What am I doing here getting beat up by a supervisor." I managed
to get away from Mr. Turcotte long enough to call the police from a
desk phone inside the building. Mr. Turcotte followed me in the
building to continue his assault but someone (I don't know whom)
restrained him. I called 911 and asked for a policeman and an
ambulance. Co-worker Steve Picard got me a towel for my face and
assisted me on the phone and waited with me until the police and
EMTs arrived. I was taken to the hospital by ambulance.

5/15/02

John W Child

SHARP ENERGY    4492601538    08/12/05  11:19am  P. 005



# EDGARTOWN
## POLICE DEPARTMENT
### 72 PEASE'S POINT WAY SOUTH
### EDGARTOWN MA 02539-1118
### 508-627-4343  Fax 508-627-4577
#### Complete Case Report

| Case Nbr | Related Nbr | Report Title | | Intersection Nc |
|---|---|---|---|---|
| **2002-01003** | | ASSAULT & BATTERY | | Block Nc |

| Incident Address | | | | |
|---|---|---|---|---|
| 6 NORTH LINE RD, EDGARTOWN | | | X Street | |

| Business/Loc | Suite | Floor | Building | Location Detail |
|---|---|---|---|---|
| | | | | 911/ AIRPORT BUS PARK |

| Date/Time From | Reported On | Case Status | Approval Status |
|---|---|---|---|
| | 05/14/2002 08:30 | | Not Approved |

| Date/Time To | Assigned On | Status As Of | Approval Date |
|---|---|---|---|
| | 05/14/2002 | | – |

| Reporting Officer | Dom. Violence | No | |
|---|---|---|---|
| ROSSI, DAVID | Sr. Cit. Involved | No | |

Copies To

**Synopsis**

860 REPORTS A FIGHT BETWEEN TWO MEN AT VINEYARD PROPANE.

## Crimes/Incidents

Code Section  **265: 13A**
Description   A& B
Classification  AGGRAVATED ASSAULT
Loss          0.00
Recovery      0.00

| **COMPLAINANT** | | | Race | Sex | Age | DOB | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| CHILD, JOHN | | | White | M | | 12/11/1945 | 0· 0 | 0 | | |

| DL Nbr/ST | | AKA | | Type |
|---|---|---|---|---|
| S55559422 | MA | | | |

| Home Address | | Home Phone |
|---|---|---|
| 129 MARINER WAY BX 2187     VINEYARD HAVEN, MA 02568 | | 508-693-5604 |

| Business Address | | Business Phone |
|---|---|---|

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| 1988 | CHEVROLET | ECONOVAN | WHITE/RED | H17203    MA | VAN |

Vehicle VIN

| Reporting Officer | | Reviewed By |
|---|---|---|
| 114 ROSSI | Page 1 of 5 | |
| Reporting Officer's Signature | | Reviewed On |



538

**EDGARTOWN**
**POLICE DEPARTMENT**
**72 PEASE'S POINT WAY SOUTH**
**EDGARTOWN MA 02539-1118**
**508-627-4343  Fax 508-627-4577**
Complete Case Report

| COMPLAINANT | | Race | Sex | Age | DOB | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|
| TERCOTE, ADRIAN | | White | M | | 04/30/1963 | 0  0 | 0 | | |
| DL Nbr/ST | AKA | | | | Type | | | | |
| Home Address | | | | | | Home Phone | | | |
| Business Address | | | | | | Business Phone | | | |
| P.O. 729      VINEYARD HAVEN, MA 02568 | | | | | | 508-693-4232 | | | |
| Vehicle Yr | Make | Model | Color | | Lic. Plate Nbr, ST | Type | | | |
| Vehicle VIN | | | | | | | | | |

| WITNESS | | Race | Sex | Age | DOB | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|
| MAZZAFERRO, GINO | | | | | | 0  0 | 0 | | |
| DL Nbr/ST | AKA | | | | Type | | | | |
| Home Address | | | | | | Home Phone | | | |
| Business Address | | | | | | Business Phone | | | |
| AIRPORT BUSINESS PARK      EDGARTOWN, MA 02539 | | | | | | 508-696-8500 | | | |
| Vehicle Yr | Make | Model | Color | | Lic. Plate Nbr, ST | Type | | | |
| Vehicle VIN | | | | | | | | | |

(No Property Records)

## Narrative

ON 5-14-02 AT APPROX. 0830 I RECEIVED A CALL FROM 860 TO RESPOND TO
VINEYARD PROPANE FOR A FIGHT BETWEEN TWO MALES AND ONE OF THEM HAS
FACIAL INJURIES.  THE AMBULANCE WAS DISPATCHED AS WELL TO THE
LOCATION.  UPON ARRIVAL I SPOKE WITH ADRIEN TURCOTTE, VINEYARD
PROPANE MANAGER, WHO ADVISED THAT AN EMPLOYEE, JOHN CHILD WAS
SUSPENDED THIS MORNING DUE TO A COMPLAINT MADE OVER THE WEEKEND.
ADRIEN ADVISED THAT HE HAD A MEETING THIS MORNING WITH JOHN AND HIS
SECRETARY, AMY KAZLAUSKAS, AND HE SUSPENDED JOHN WITHOUT PAY AND
REQUESTED THAT JOHN TURN IN HIS VAN KEYS, CELL PHONE AND PAGER.
ADRIEN ADVISED THAT JOHN REFUSED TO TURN IN HIS EQUIPMENT AND LEFT

| Reporting Officer | | Reviewed By |
|---|---|---|
| 114 ROSSI | Page 2 of 5 | |
| Reporting Officer's Signature | | Reviewed On |



**EDGARTOWN
POLICE DEPARTMENT
72 PEASE'S POINT WAY SOUTH
EDGARTOWN MA 02539-1118
508-627-4343  Fax 508-627-4577**
Complete Case Report

THE OFFICE. ADRIEN ADVISED THAT JOHN THEN LEFT THE OFFICE AND WENT ACROSS THE STREET AND GOT INTO HIS VAN AND WAS ABOUT TO LEAVE THE PROPERTY. ADRIEN ADVISED THAT HE WENT OVER TO THE VAN AND JOHN THEN CAME AFTER HIM IN THE VAN AND STRUCK HIS ELBOW WITH THE MIRROR. ADRIEN SHOWED ME THE MIRROR WAS OUT OF PLACE ON THE VAN BUT WAS NOT DENTED. I ASKED ADRIEN IF HE WAS HURT AND HE ADVISED THAT HE HAD A BRUISE ON HIS ELBOW AND SHOWED OFFICER GAZAILLE AND I HIS ELBOW WHICH REVEALED NO SIGNS OF SWELLING OR DEFORMITY. ADRIEN ADVISED THAT HE WANTED TO TAKE OUT CHARGES AGAINST JOHN. I ADVISED ADRIEN THAT HE SHOULD SIGN A NO TRESPASS NOTICE TO JOHN AS WELL TO AVOID POTENTIAL PROBLEMS UNTIL THIS MATTER CAN BE RESOLVED.

I ASKED IF THERE WERE ANY WITNESSES TO THAT HAPPENING AND ADRIEN REPLIED THERE WAS NOBODY BUT GINO MAZZAFERRO WAS WALKING OUT OF THE VINEYARD PROPANE OFFICE AFTER THIS HAPPENED. ADRIEN ADVISED THAT JOHN THEN STOPPED IN FRONT OF THE PROPANE BUILDING AND THEY HAD WORDS AND THEN JOHN DROVE THE VAN TO THE BACK OF THE BUILDING WHERE IT WAS LOCATED UPON ARRIVAL. ADRIEN THEN ADVISED THAT JOHN GOT OUT OF THE VAN AND ADRIEN ATTEMPTED TO TAKE THE CELL PHONE FROM JOHN AND JOHN PUNCHED HIM. ADRIEN THEN STATED AFTER JOHN HIT HIM HE POPPED HIM A COUPLE OF TIMES.

OFFICER GAZAILLE SPOKE WITH MR. MAZZAFERRO. MAZZAFERRO STATED THAT HE CAME OUT OF THE VINEYARD PROPANE BUILDING AND SAW JOHN OUT FRONT WITH THE VAN AND THEN SAW ADRIEN COME AROUND THE CORNER. MAZZAFERRO STATED THAT HE TOLD ADRIEN GOOD MORNING AND GOT NO REPLY AND IT APPEARED THAT ADRIEN WAS VERY UPSET. MAZZAFERRO STATED THAT HE DIDN'T SEE ANYTHING ELSE AND JUST KEPT WALKING ACROSS THE STREET.

JOHN CHILD WAS TREATED AT THE SCENE BY EDGARTOWN EMT'S AND TRANSPORTED TO THE M.V. HOSPITAL FOR FACIAL INJURIES. I RESPONDED TO THE HOSPITAL AND SPOKE WITH JOHN. JOHN STATED THAT HE WAS SUSPENDED THIS MORNING FOR NO GOOD REASON AND THAT ADRIEN HAS IT OUT FOR HIM ANYWAY DUE TO A PAST INCIDENT. JOHN STATED THAT THE CALL HE WENT TO OVER THE WEEKEND COULDN'T BRE DONE BECUASE OF CODE REGULATIONS AND SAFETY ISSUES. JOHN STATED THAT ADRIEN DID REQUEST HE TURN IN HIS PHONE, KEYS TO THE VAN, AND HIS PAGER. JOHN STATED THAT HE DIDN'T WANT TO GIVE HIM THE KEYS RIGHT AWAY BECUASE HE HAD A LOT OF PERSONAL ITEMS IN THE VAN HE WANTED TO REMOVE FIRST. JOHN STATED THAT HE DROVE THE VAN TO THE FRONT OF THE PROPANE BUILDING AND WAS CONFRONTED BY ADRIEN WHILE HE WAS ON THE PHONE WITH HIS WIFE. JOHN STATED THAT HE THEN DROVE TO THE REAR OF THE BUILDING TO

| Reporting Officer | | Reviewed By |
|---|---|---|
| 114 ROSSI | Page 3 of 5 | |
| Reporting Officer's Signature | | Reviewed On |

**POLICE DEPARTMENT**
**72 PEASE'S POINT WAY SOUTH**
**EDGARTOWN MA 02539-1118**
**508-627-4343 Fax 508-627-4577**
Complete Case Report

PARK IT.  JOHN STATED THAT WHEN HE GOT OUT OF THE VAN ARIEN
APPROACHED HIM AND STRUCK HIM A COUPLE OF TIMES IN THE FACE.  JOHN
STATED THAT HE PUNCHED HIM BACK AND THEY WENT TO THE GROUND AND
ADRIEN PUNCHED HIM A COUPLE OF MORE TIMES.  JOHN STATED THAT HE HAD
IT BY THEN, GOT UP, WENT INTO THE OFFICE AND CALLED 911.

I ASKED JOHN IF HE HAD STRUCK ADRIEN WITH VAN AND HE REPLIED THAT HE
HAD NOT AND DIDN'T HAVE ANY CONTACT WITH ADRIEN UNTIL HE APPROACHED
THE VAN IN FRONT OF THE BUILDING.  JOHN REAFFIRMED TO ME THAT ADRIEN
DIDN'T LIKE HIM AND HE WANTED TO TAKE OUT ASSUALT CHARGES.

I SPOKE WITH ADRIEN LATER THAT MORNING AND HE ADVISED THAT HE HAD
GONE TO THE HOSPITAL AND WAS TREATED FOR POSSIBLE FRACTURES.   I
SPOKE WITH THE E.R. DOCTOR, DR. YUKEVICH.  DR. YUKEVICH THAT BOTH
PARTIES WERE TREATED AT THE E.R. AND BOTH WERE DIAGNOSED WITH
CONTUSIONS, N O FRACTURES WERE FOUND ON EITHER PARTY INVOLVED AND
WERE RELATIVELY MINOR.

ADRIEN FILLED OUT SIGNED A TRESPASS NOTICE AGAINST JOHN AND I SERVED
IT ON 5/15/02 AT APPROX. 0930 HOURS AT THE STATION.  I ADVISED BOTH
PARTIES THAT I WOULD BE TAKING OUT CHARGES OF ASSUALT & BATTERY
AGAINST EACH OF THEM AND THEY WOULD BE NOTIFIED BY THE COURT.

ADRIEN INQUIRED AS TO ADDITIONAL CHARGES AGAINST JOHN AND I ADVISED
HIM BASED ON MY INVESTIGATION I WOULD BE TAKING OUT THE PROPER
CHARGES.  I OFFERED TO ASSIST ADRIEN WITH ANY ADDITIONAL CHARGES HE
MAY WISH TO PROCEED WITH PRIVATELY AND SUGGESTED HE SUBMIT A
WRITTEN IMPACT STATEMENT TO ATTACH TO MY REPORT.  NFA

| Reporting Officer | | Reviewed By |
| --- | --- | --- |
| 114 ROSSI | Page 4 of 5 | |
| Reporting Officer's Signature | | Reviewed On |

SHARP ENERGY 4432601538
08/12/05 11:13am P. 009

# HOSPITAL
### VINEYARD
Post Office Box 1477, Oak Bluffs, Massachusetts 02557

PLEASE SEE REVERSE SIDE FOR UNIT INFORMATION

| | |
|---|---|
| PAGE | 1 |
| AMOUNT ENCLOSED | TYPE |
| $ | STATE |

ACCOUNTS ARE DUE AND PAYABLE UPON RECEIPT OF THIS STATEMENT.  **THANK YOU!**
PLEASE MAKE CHECKS PAYABLE TO: MARTHA'S VINEYARD HOSPITAL

PLEASE DETACH AT PERFORATION AND RETURN WITH YOUR REMITTANCE

| PATIENT NAME | PATIENT ACCOUNT NUMBER | ADMISSION DATE | DISCHARGE DATE | BILLING DATE |
|---|---|---|---|---|
| ADRIEN TURCOTTE | 15881105 | 05/14/02 | 05/14/02 | 07/01/ |

| GUARANTOR | INSURANCE COVERAGE | POLICY NUMBER |
|---|---|---|
| PROPANE VINEYARD<br>AIRPORT BUSINESS PARK<br>PO BOX 2102<br>VINEYARD HAVEN MA  02568 | ESIS | C445C242318X |

| | DESCRIPTION | QTY | AMOUNT |
|---|---|---|---|
| 05/31/02 | Balance Forward<br>Charges to date: | | 1529.1<br>1529. |
| | Estimated insurance due: | | 0.0 |

Your balance remains outstanding. Please pay promptly or
call (508) 693-0410 Ext. 209 to arrange a payment plan.

ACCOUNT NUMBER

- THIS STATEMENT IS NOT TO BE USED FOR INSURANCE BILLING PURPOSES - IF YOU HAVE INSURANCE COVERAGE AND DID NOT PROVIDE BILLING INFORMATION AT THE TIME OF SERVICE PLEASE COMMUNICATE WITH THE PATIENT ACCOUNTING OFFICE IMMEDIATELY.
- ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS BILL WAS PREPARED.
- FREE CARE, PUBLIC ASSISTANCE, AND PAYMENT PLANS ARE AVAILABLE TO FINANCIALLY QUALIFIED PERSONS.
  IMPORTANT: Free Care Eligibility Guidelines on Reverse Side.

| | 15881105 | |
|---|---|---|
| TOTAL | | |
| TOTAL CREDITS | | 1529. |
| TOTAL DUE | | 0. |
| ESTIMATED INSURANCE COVERAGE | | 1529. |
| | | 0. |
| PATIENT BALANCE DUE | | 1529. |



FORM 101

**The Commonwealth of Massachusetts**
**Department of Industrial Accidents – Department 101**
600 Washington Street – 7th Floor, Boston, Massachusetts 02111
Info. Line 800-323-3249 ext. 470 in Mass - Outside Mass - 617-777-4900 ext. 470
http://www.state.ma.us/dia

DIA USE ONLY

## EMPLOYER'S FIRST REPORT OF INJURY OR FATALITY

01757272

THIS FORM MUST BE FILED BY THE **EMPLOYER** IN THE EVENT OF AN INJURY THAT RESULTS IN DEATH
OR FIVE OR MORE CALENDAR DAYS OF TOTAL OR PARTIAL INCAPACITY FROM EARNING WAGES.
*INSTRUCTIONS AND CODES ON THE REVERSE SIDE - Please Print Legibly or Type - Unreadable forms will be returned.*

| | |
|---|---|
| **E M P L O Y E E** | 1. Employee's Name (Last, First, MI): **TURCOTTE    ADRIEN** / 2. Home Telephone Number: **207-622-1252** / 3. Social Security Number*: **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** / 4. Sex: [X] M [ ] F |

5. Home Address (No., Street, City, State & Zip Code): **18 WORCESTER STREET / AUGUSTA    ME    04330** — 6. Marital Status: [ ] M [ ] S — 7. No. of Dependents: **0**

8. Date of Hire (mm/dd/yyyy): **08/01/1999** — 9. Date of Birth (mm/dd/yyyy): **04/30/1963** — 10. Average Weekly Wage: $ [ ] Estimated [ ] Actual

**EMPLOYER**

11. Employer's Name: **CORNERSTONE PROPANE L.P.** — 12. Federal Tax I.D. Number: **77-442450**

13. Employer's Address: **P.O. BOX 7000    AC7A7564 / LEBANON    MO    65536** — 14. Employer's Telephone Number: **417-532-3101** — 15. Industry Code: 

16. Workers' Compensation Insurance Carrier and Tel. No. (NOT LOCAL AGENT/ADMINISTRATOR): **ACE USA/ESIS New England WC Office    800-832-9130** — 17. W.C. Policy Number:

18. Self-Insured? [ ] Yes [ ] No — If Yes, Self-Insurer Number: — 19. Business Type: [ ] Service [X] Wholesale [ ] Mfg. [ ] Retail [ ] Other

**INJURY INFORMATION**

20. DATE OF INJURY (mm/dd/yyyy): **05/14/2002**

21. Was Employee Injured on Employer's Premises? [ ] Yes [X] No — 22. Location of Injury if not on Employer's Premises: **UNKNOWN    MA**

23. FIRST day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): — 24. FIFTH day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy):

25. If Employee has Died, Date of Death (mm/dd/yyyy): — 26. Source of Injury (Chemicals, Machinery, etc.): **AUTOMOBILE**

27. Briefly Describe How Injury/Exposure Occurred and Body Part(s) involved: **CONTUSION TO TRUNK / EMPLOYEE WAS INVOLVED IN ALTERCATION INVOLVING ANOTHER EMPLOYEE. SOURCE OF INJURY WAS AN AUTOMOBILE. NO FURTHER DETAILS WERE REPORTED.**

28. Person to Whom Injury was Reported (list position): **SUPERVISOR** — 29. Date Reported (mm/dd/yyyy): **05/14/2002** — 30. Date Reported as work related (mm/dd/yyyy): **05/14/2002**

31. Injury Code(s): a. **160**    Body Part Code(s): a. **400** / b. to body part b. / c. to body part c. — 32. Witness(es) to Injury - Give Full Name(s), if none state as such: **NONE REPORTED**

33. Has Employee Returned to Work? [ ] Yes [ ] No — 34. Date Employee Returned to Work (mm/dd/yyyy):

35. Employee's Regular Occupation: **NOT REPORTED** — 36. Has Employee Returned to Regular Occupation: [ ] Yes [ ] No

37. EMPLOYER'S Name: **CHRISTY KUSE** — 38. Title: **RISK MGMT. ASST.**

39. EMPLOYER'S Signature: **SIGNATURE ON FILE** — 40. Date Prepared (mm/dd/yyyy): **05/17/2002**

*Disclosure of Social Security Number is Voluntary. It will aid in the processing of your report.    Form 101 - Revised 8/2001 - Reproduce as needed.

**THIS FORM DOES NOT CONSTITUTE AN EMPLOYEE'S CLAIM FOR BENEFITS UNDER WORKERS' COMPENSATION.**

Date: Saturday, May 11 2002
Re: On Call

At about 3:00 p.m. I received a page from the answering service.
I was told that Mrs. Mike Carroll of Chickawaukee Street, Oak
Bluffs, was reporting a strong gas smell coming from the tank. I
called Mrs. Carroll, stated that I was John Child from Vineyard
Propane and proceeded to take down the information from her. I
did not have the company truck but since it is company policy that
reports of gas smells be responded to immediately and the fact
that I was near the area, I drove to her house in my personal car to
turn off the gas and assess the situation with the intention of
returning with the company vehicle to make a regulator repair or
replacement.

Upon arrival, I assessed that there was a leak at the tank. I turned
the tank off. Mrs. Carroll also complained that her kitchen stove
"pops" every time she turns it on. She said that she has reported it
to the company but they have not looked at it yet. Suspicious and
sensitive to her expressed concerns about the safety of the gas I
inspected the system. This was done at her request (after relating
to me stories of a friend of hers "blowing up", etc.)

My observation of the system was as follows:
1. At the second stage regulator I saw a 5/8" copper line in and a
1/2" copper line coming out. The 5/8" line is O.K. for high pressure
and distance but the 1/2" is insufficient for the length of run and the
total B.T.U. load. I assessed this caused a high lockup pressure and
the excess is released out of the first stage regulator.

2. I then observed an "on demand" hot water heater in the cellar.
This particular unit has a 3/4" I.P.S. nipple coming out of the base
of the unit. This requires a main trunk line of 3/4" or bigger and a
drip leg to catch sediment. What I saw was an illegal gas cock
reduced down to 1/2" copper and no drip leg. This 1/2" copper is
incapable of carrying the volume and pressure needed to safely
run this unit plus the kitchen stove.

3. The hot water heater is a naturally aspirated unit and must have
a vent drip leg and be vented up through the roof and terminate 2
feet above the ridge and 10 feet away from the peak. What I

observed was the vent was only 2 feet off the ground, leaning against the wooden shower which showed evidence of being charred from heat.

In my professional opinion this situation was unsafe and I told the customer that the tank would have to remain shut off until system was rectified. She inquired if the house could be repiped that afternoon or Sunday. I told her that this was not the kind of large scale job that could be completed in an "on call" setting.
I told her the following:
1. She could call Vineyard Propane and be put on the list on Monday.
2. With regard to her inquiries as to cost, I said it would most likely be a significant expense and that she should make herself aware of the cost before proceeding.
3. With regard to people qualified to do the work, I responded that any licensed plumber would be an acceptable choice.
4. I told her that her husband could probably do the vent himself in order to save money on condition that he confer with John Anderson (Vineyard Propane) regarding design and any other specifications.
5. I also told her that since she would be without gas for the weekend that staying at a hotel or with friends or family might be an option even though an inconvenience.
6. She ended our conversation by assuring me that she wanted the house to be safe. She also requested that she wanted a pressure test on the main house underground line and piping inside. Also the next cottage which had a Rinnai heater running on a 40 lb. cylinder which by the way is also illegal and unsafe.

She indicated that her husband would probably be angry but since there was nothing further that I could do I left. About an hour or so later I received a page from the answering service. She said it was Mr. Carroll and he was extremely angry and for me to call. I made several attempts to reach Mr. Carroll but only got the answering machine. Company policy dictates that service people can only respond to a "live" person.

Since my wife was in the car, she was witness to most of the exchange that took place at Mr. Carroll's house and was with me when the second call from the answering service came in.

Monday morning, upon arrival at work I told Cliff Estrella the above and he did not express concern. Later, I learned that he and manager Adrian Turcotte went to Mr. Carroll's house at which time Mr. Carroll threatened my life. I was told to report to Adrian Turcotte's office that afternoon. He wasn't there so I was told to report the following morning.

5/15/02

John w Child

he said I would have to talk to Cliff on Monday    I wasn't happy about this.  I asked if it
could be fixed before this and he said that I would have to get in line and talk to Cliff on
Monday morning, that 'come Monday Cliff was the boss, but tonite he was'—Then, I
said to him, 'is this why you are treating me like this?'  His conversation was not as clear
as this writing, it was not like having a normal conversation.  I though I should have
asked him to leave, but I was concerned that there was a serious problem with the gas, so
I continued to give him the benefit of the doubt.

At no time was he 'sensitive' to my concerns—per his narrative.
He never told me that he had turned off the gas, I concluded this after trying to make
sense of what he was saying to me.
He never told me that I should be aware of the cost before proceeding—rather, he
laughed as he said that it was going to cost us a lot of money—occasionally throwing out
a figure of money.
He never said I would be without gas for the weekend—nor did he suggest that we stay at
a hotel or with friends or family—even though an inconvenience.
I did not ask for a pressure test on the underground line—I asked for it to be checked for
leaks—perhaps this is the same thing, but I do not know about pressure tests.
We do not have a rinnai (sp?) heater in the cottage next door running on a 40lb.
Cylinder—gas comes from a large tank—that HE installed—with the piping.
I never said my husband would be angry—I said he was going to be upset because he is
so tired and stressed from work—I didn't want to have to add to his worries.
Michael called him about a half hour later—he said that someone had just come to the
house and upset his wife and he wanted a call back—it was an emergency.  We never
received a call back.
His wife was not a 'witness to most of the exchange'—most of it took place out of her
view and hearing.
Michael never threatened this man's life in any conversation.

After he left I thought that if this man was not drunk then he was mentally ill—I
considered that he was a diabetic because I know that if their sugar levels are off they can
seem drunk.

Edwards –
    Customer –

5/20/02

My contact with John Child was brief on Tuesday morning, May 14, 2002.

I was at my desk and heard foot steps coming toward my work area.

I turned around to see that it was John Child.

I said hello to him.

In return he responded, "Hi" was smiling and threw his thumb up at me and proceeded out the front door.

Mary Beth Baptiste

May 17, 2002

On Tuesday, May 14, 2002, I arrived at work at my usual time of 7:45. Shortly after, I heard John Child's voice in the front office. He said something to Amy in the context that he was to report to Adrien this morning. He proceeded to come through the office past my desk into Adrien's office. Adrien and John exchanged casual conversation for a few minutes and then Amy, the office manager, joined them and closed the door. They were in there for approximately 15 - 20 minutes. When the meeting was over and the door opened I heard Adrien tell John that under company suspension he was required to hand in his truck keys, company keys, and pager before he left. John did not respond, he just walked out of the office.

My desk is situated right outside Adrien's office door, therefore, if there are any disruptive or heated discussions going on in his office I can hear them clearly, even when the door is closed. During their meeting that morning I heard no such going ons.

Sincerely,

Patricia Rega-Zadeh

Patricia Rega-Zadeh

05/16/02

I am employed in the position of Office Manager for Daniele & Rogers and Vineyard Propane. The General Manager of both locations, Adrien Turcotte, called me into his office on May 13, 2002 to tell me that he would be having a meeting in the near future with an employee regarding a customer complaint that he received. He told me that the meeting was going to be with John Child, a propane tech employed at Vineyard Propane. Mr. Turcotte had told me that a customer had called and complained about some disturbing behavior on the part of Mr. Child during an on-call service call from the weekend. Mr. Turcotte asked me to be present during this meeting. This meeting with Mr. Child and Mr. Turcotte took place on the morning of May 14, 2002 at approximately 8:30 a.m.

Mr. Turcotte began the meeting by greeting Mr. Child with a "good morning, John." Mr. Turcotte then told Mr. Child that he was called in to the office to speak to him regarding a complaint from a customer and if he recalled going to the home of the Carroll's on Mariner Road in Oak Bluffs. Mr. Child had replied "yes." Mr. Turcotte proceeded by asking a series of questions about what exactly had happened during the service call. One of those questions being "did you identify yourself to Mrs. Carroll?" Mr. Child replied, "yes." Mr. Turcotte inquired about how many times did he identify himself to Mrs. Carroll? He replied, "maybe twice." Mr. Child then offered the information that "he and Mrs. Carroll knew each other and that they were joking around."

Mr. Turcotte inquired to Mr. Child if he had made a comment to Mrs. Carroll about "her husband should have known better to design or leave their (heat) system like this." Mr. Child denied this and responded by saying, "he heard that her husband (Mike Carroll) wanted to kill him."

Mr. Turcotte presented these questions in very cool and calm manner and allowed plenty of opportunity to explain his side of what had transpired during the service call. Mr. Child answered with denial to all questions posed by Mr. Turcotte. In my opinion, he constantly looked all around the room and seemed like he couldn't focus on the questions at hand. He never looked directly at either Mr. Turcotte or me.

Mr. Turcotte has told Mr. Child that there seemed to be some discrepancies between his story and the customer's story and that he was hereby suspended without pay until some more investigating could be done into the complaint. He also told Mr. Child that he would need his keys and cell phone and beeper immediately.

Mr. Child stood up, smiled, and for the first time during the entire meeting, looked directly at Mr. Turcotte and gave a forceful "thumb's up." Mr. Child then stood over me and looked right at me and did the same "thumb's up" and walked out to door. Mr. Turcotte called out, " John, John, John..I need those keys and things right now." Mr. Turcotte then looked at me with disbelief and then got up form his chair and walked out of his office. It was the oddest behavior I have ever seen. I walked out of his office a minute later and immediately saw another employee, Patty Zedah, who sits right outside of Mr. Turcotte door. Patty asked if everything was all right, and I jokingly banged my head on an adjacent desk, rolled my eyes to her, and walked to the front office.

I did not follow Mr. Turcotte or even see where he went. I went directly to my desk where I was met with the heat techs inquiring about their schedules. Moments (5,10 minutes) went by and another employee, Greg Kurth, had called to ask "what happened???" in an excited voice. Mr. Kurth had informed me that an ambulance was called to the Vineyard Propane location for a fight."

It was then that I walked over to Vineyard Propane where I saw the police questioning Mr. Turcotte and the EMT's walking toward the ambulance with Mr. Child.

On Wednesday, May 15, 2002 I was also present during a meeting with Cliff Estrella, the former owner of Vineyard Propane and Mr. Turcotte. Mr. Turcotte had made the comment that he could not believe that the whole incident happened and Mr. Estrella responded by saying, "Oh, I could. You don't know that half of it. You know, Adrien, I blame myself for this because I have been too lenient with him (meaning Mr. Child) and there is stuff that you aren't even aware of...things that I just buried because I am too nice and didn't want to get anyone in trouble."

***(I was informed later that the woman we had identified and inquired about and called "Mrs. Carroll" is actually Marnie Edwards, not Marnie Carroll—Mike Carroll's wife.)***

Date:  5/16/02

Amy C. Kazlauskas
Office Manager
Daniele and Rogers
Vineyard Propane

# MICHAEL CARROLL
## P.O. BOX 621
### WEST TISBURY, MA 02575

May 24, 2002

A STATEMENT REGARDING THE EVENTS OF MAY 11 AND 13, 2002

At approximately 6:30 PM on May 13, I was at a business meeting on Newton Ave. in Oak Bluffs. I received a phone call from my partner, Marnie Edwards, telling about the visit that she had just received from an unidentified Vineyard Propane service technician. The visit was in response to a call she had made after she told me she smelled gas around the exterior of the house. Marnie was very upset and me that the technician had refused to identify himself, had been very rude to her, and had made a number of disparaging remarks about me in the course of his visit.

I asked her to join me at the Newton Ave. house to discuss the situation more fully. After she arrived and told me a fuller version of the story, I left Newton Ave. and returned to my house. I checked the condition of the house and made a call to Vineyard Propane. I spoke to a female answering service employee. I said that I wanted to speak to the service man who had recently been to my house. The answering service person said that she had already conveyed that message. I said that he (the still unidentified technician) had come out to the house while I was not at home, had bullied and frightened my wife, and that I was very angry about that. I said that now I wanted to speak to him as one man to another. I left my cell phone number with her and asked her to page him. Although I carried that phone with me all evening and the next day, I received no callbacks not did I get any voice mail messages.

The following Monday morning at about 9:45 AM I called Cliff Estrella from my cell phone. I described the matter to him and told him that I was considering severing business relations with his company because of this shockingly rude and unprofessional behavior by one of his employees. Cliff agreed to meet me at my home later in the morning. At approximately 10:30 AM, he and Adrian Turcotte arrived at my house. I described in detail the events of the preceding Saturday and called Marnie at her work. She and Adrian spoke on the phone for approximately 15 –20 minutes. After thanking me for bringing this matter to their attention, apologizing for the event, and discussing various gas upgrades in the house they left at about 11:20 AM.

At no time on either Saturday evening or Monday morning did I make any threats Mr. Childs. I did tell Cliff and Adrian I consider him a bully for his behavior to my wife and a coward for his failure to return my phone call. I consider that a statement of opinion. I have had no personal contact with Mr. Childs at any time during these events.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _John W. CHILD v Titan PROfine LLC_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___ I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   ✓ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                                YES ☐    NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)
                                                                YES ☐    NO ☑
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                                YES ☐    NO ☑

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                                YES ☐    NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                                YES ☐    NO ☑

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☐      Central Division ☐      Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☑      Central Division ☐      Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                                                                YES ☑    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _NORMAN HOLTZ_
ADDRESS _25 NEW CHARDON ST BOSTON_
TELEPHONE NO. _(617) 720-0501_

(CategoryForm.wpd -5/2/05)

℀JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| John W. Child | Adrien Turcotte and Titan Propane LLC |
| **(b)**  County of Residence of First Listed Plaintiff <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE <br> LAND INVOLVED. |
| **(c)**  Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known)  Norman Holtz |

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☐ 1  Original Proceeding

☒ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

28 USC 31332, 1441, 1446

Brief description of cause:  Personal Injury · Assault. Defamation, Interference Employment Relation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE  9/2/2005

SIGNATURE OF ATTORNEY OF RECORD  [signature]  Holtz, attorney for Adrien Turcotte

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE