MAS-20041213
piénces

10/07/2005
09:29 AM

# Commonwealth of Massachusetts
## DUKES SUPERIOR COURT
### Case Summary
### Civil Docket

FILED
IN CLERKS OFFICE

## DUCV2005-00029
## Child v Turcotte et al

2005 OCT 11 ᗡ 3: 31

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 05/13/2005 | **Status** | Disposed: transfered to other court (dtrans) | | | |
| **Status Date** | 09/09/2005 | **Session** | A - Civil A | | U.S. DISTRICT COUR | |
| **Origin** | 1 | **Case Type** | B04 - Other negligence/pers injury/pro | | DISTRICT OF MASS | |
| **Lead Case** | | **Track** | F | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 08/11/2005 | **Answer** | 10/10/2005 | **Rule12/19/20** | 10/10/2005 |
| **Rule 15** | 10/10/2005 | **Discovery** | 03/09/2006 | **Rule 56** | 04/08/2006 |
| **Final PTC** | 05/08/2006 | **Disposition** | 07/07/2006 | **Jury Trial** | Unknown |

### PARTIES

**Plaintiff**
John W Child
PO Box 2187
Vineyard Haven, MA 02568
Active 05/13/2005

**Private Counsel 646667**
T. George Davis, Jr.
P.O. Box 1150
Vineyard Haven, MA 02568
Phone: 508-693-8820
Active 05/13/2005 Notify

**Defendant**
Adrien R Turcotte
101 Overlook Drive
Salisbury, MD 21804
Served: 08/03/2005
Served (answr pending) 08/25/2005

**Private Counsel 238880**
Norman Holtz
Gilman/Holtz PC
25 New Chardon Street
Boston, MA 02114
Phone: 617-720-2663
Fax: 617-720-1574
Active 09/06/2005 Notify

A True Copy,

Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

**Defendant**
Titan Propane LLC d/b/a Vineyard Propane
1700 S. Jefferson
Lebanon, MO 65536
Served: 08/05/2005
Served (answr pending) 08/25/2005

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 05/13/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 05/13/2005 | | Origin 1, Type B04, Track F. |
| 05/13/2005 | | Tracking: origin/track set, Notice sent to Plt. Atty. |
| 08/08/2005 | 2.0 | Amended complaint of John W Child |
| 08/25/2005 | 3.0 | SERVICE RETURNED: Adrien R Turcotte(Defendant) |
| 08/25/2005 | 4.0 | SERVICE RETURNED: Titan Propane LLC d/b/a Vineyard Propane(Defendant) |
| 09/02/2005 | 5.0 | Defendant Adrien R Turcotte's MOTION to enlarge time for responding to the Pltf's Complaint. |
| 09/06/2005 | | MOTION (P#5, Motion to Enlarge Time to Respond to Complaint) ALLOWED (Connolly, Justice) Notices mailed September 06, 2005 |

**Commonwealth of Massachusetts**
**DUKES SUPERIOR COURT**
Case Summary
Civil Docket

## DUCV2005-00029
### Child v Turcotte et al

| Date | Paper | Text |
|------|-------|------|
| 09/09/2005 | 6.0 | Case REMOVED this date to US District Court of Massachusetts |

EVENTS



## COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.                              SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. DUCV2005-_00029

                                        \

_____ )
                                 )      A True Copy,
JOHN W. CHILD                    )
                                 )      Attest:        *Joseph E. Sollitto Jr.*
              Plaintiff          )
                                 )                     JOSEPH E. SOLLITTO, JR.
                                 )                     CLERK OF COURTS
v.                               )
                                 )
ADRIEN R. TURCOTTE               )
                                 )
              Defendant          )
_____ )

### COMPLAINT

### INTRODUCTION

Plaintiff John W. Child hereby complains of the
Defendant Adrien Turcotte that the Defendant is guilty of
assault and battery, intentional infliction of emotional
distress, intentional interference with an employment
relationship, defamation, and malicious prosecution, for
which Plaintiff hereby seeks damages pursuant to the
applicable laws of the Commonwealth of Massachusetts.

### PARTIES

1.    Plaintiff John W. Child is an adult resident of the
Commonwealth of Massachusetts, who resides at 17 Mariner
Road, P.O. Box 2187, Tisbury, Massachusetts 02568.

2.    Defendant Adrien R. Turcotte is an adult resident of the
State of Maryland, who resides at 101 Overlook Drive,
Apartment 3G, Salisbury, Maryland 21804.

GENERAL FACTS AND NATURE OF THE ACTION

3.    Between 1992 and 2002, the Plaintiff, John Child, was a
regular, full-time employee of the Martha's Vineyard branch
of Cornerstone Propane Partners L.P. ("Cornerstone"), where
he worked as a propane gas installer and serviceman.

4.    The Defendant, Adrien Turcotte, was employed as the
Cornerstone's Operations Manager between 1999 and 2002,
during which time he served as the Plaintiff's immediate
supervisor.

5.    Cornerstone compensated the Plaintiff for his
employment, with weekly wages based on the number of hours
worked, overtime compensation at the rate of 1.5 times his
hourly rate for work in excess of forty (40) hours per week,
and a comprehensive benefits package, including but not
limited to a contributory retirement plan which Cornerstone
matched dollar-for-dollar, paid vacation time, and a joint
contributory health and hospitalization insurance plan that
provided coverage for the Plaintiff and his wife.

6.    On Sunday, May 12, 2002, the Plaintiff was on duty to
perform emergency services for Cornerstone customers, when he
received an emergency call to inspect the gas service at the
home of one such customer.  The Plaintiff was qualified to
perform these services, as he was the holder of a
Massachusetts Commercial Driver's License (CDL) (License No.
S55559422), a Journeyman Plumber's License (License No.
23862), and a Plumbers and Gas Fitters License as a liquid
propane gas installer (License No. 1073).  In addition, the

2

Plaintiff was a licensed Oil Burner Technician (License No.
BU 025876).

7.    In response to the emergency call, the Plaintiff
immediately conducted an inspection at the customer's
residence and determined that the gas system was dangerous to
the residents, because of numerous plumbing and gas code
violations, including but not limited to a leaking propane
tank, inadequate and improperly installed ventilation,
improperly sized piping, the absence of required safety
equipment, and the proximity of gas systems to electrical
services.    The Plaintiff informed the customer of the danger,
and shut off the gas service at the tank as a precautionary
measure.    The Plaintiff then advised the residents to call
Cornerstone during normal business hours the following day
and have the appropriate repairs made, to bring their system
into gas and plumbing code compliance before turning the gas
service back on.

8.    On Monday, May 13, 2002, during his regular hours of
employment, the Plaintiff was summoned to meet with the
Defendant in his office.    When the Plaintiff arrived at the
Defendant's office, however, the Defendant was not there, and
the Plaintiff was instructed to return the following morning.

9.    On the morning of Tuesday, May 14, 2002, the Plaintiff
met with the Defendant in the Defendant's office.    During the
course of this meeting, the Defendant suspended the Plaintiff
indefinitely without pay, effective immediately, allegedly
for "inconveniencing" the Cornerstone customer on May 12,
2002.    Although the Plaintiff disagreed with the Defendant's
assessment of the appropriate course of action in response to

3

the safety issues discovered during the May 12, 2002
emergency call, and he disagreed with the propriety of the
Defendant suspending him without pay under these
circumstances, the Plaintiff did nothing during this meeting
to incite or provoke the Defendant to violence.

10.  At the conclusion of the meeting, the Plaintiff left the
Defendant's office and went directly to the Cornerstone
parking lot, to retrieve his personal effects from the
company van.  Soon after the Plaintiff entered the van to
collect his things, the Defendant appeared and began beating
his fists against the van window and pulling the driver's
side door handle.  As a result of the Defendant's actions and
demeanor, the Plaintiff became concerned for his personal
safety and did not want this spectacle viewed by his fellow
workers, so he moved the van to the rear of the building and
parked it there.

11.  The Defendant followed the Plaintiff as he drove to the
rear of the building.  As the Defendant approached the van
again, the Plaintiff opened the door, whereupon the Defendant
grabbed him by his clothing, dragged him from the vehicle and
began striking him in the face with his closed fist.  After
punching the Plaintiff several times, the Defendant then took
the radio the Plaintiff was holding in his hand and used it
as a weapon to further strike the Plaintiff in the face.  At
some point during this portion of the attack, the Defendant
broke the Plaintiff's eyeglasses.

12.  Continuing the attack, the Defendant then knocked the
Plaintiff to the ground and began kicking and hitting him.
Finally, the Plaintiff was able to escape, and he returned to

4

the building.  As he did, the Defendant pursued him, in an
effort to continue the attack.  However, upon information and
belief, the Defendant was restrained by a third party from
doing so, near the entrance to the building.

13.   Once inside the building, the Plaintiff immediately
placed an emergency 911 telephone call and requested that a
police officer and an ambulance be sent to the scene.

14.   The Plaintiff was transported by ambulance to the
Martha's Vineyard Hospital Emergency Room on the morning of
May 14, 2002, where he was diagnosed with facial trauma,
contusions of the nose and forehead, and a concussion, as a
result of the attack.

14.   Shortly after his attack on the Plaintiff, the Defendant
concocted and published an utterly false version of events.
In that regard, the Defendant knowingly filed false reports
with the Edgartown Police Department and with Cornerstone's
Human Resources Division, in which he alleged as follows:
that it was the Plaintiff, and not he, who was the aggressor;
that the Plaintiff drove the van in such a way as to strike
him and had attempted to run over him; that the Plaintiff had
then repeatedly struck him with his fists; and that the
Defendant struck the Plaintiff only in self-defense.  (A copy
of the Defendant's May 14, 2002 written statement submitted
to Cornerstone's Human Resources Division is attached hereto
as Exhibit A.)

15.   At the time that he made these statements, Mr. Turcotte
knew them to be complete fabrications, designed solely to
impugn the Plaintiff's character and reputation.

5

16. By letter dated May 17, 2002 and received on May 21, 2002, the Plaintiff was notified by Cornerstone, through its Director of Human Services, that he was discharged from employment, effective May 14, 2002. The reasons given for the discharge were that he had allegedly been insubordinate and that he had allegedly assaulted his supervisor, the Defendant. (A copy of the May 17, 2002 Cornerstone letter is attached hereto as Exhibit B.) Significantly, however, neither the Cornerstone Director of Human Services nor anyone else in Cornerstone management had made any effort whatsoever to contact the Plaintiff and obtain his version of the incident, but rather had relied solely only the Defendant's malicious fabrications.

17. On May 15, 2002, the Edgartown Police served the Plaintiff with a M.G.L. c. 266, § 120 "no trespass" notice, stating that the Plaintiff was no longer allowed to physically enter the Cornerstone property, and that he would be arrested and/or prosecuted for trespassing if he were to violate the notice. Upon information and belief, this "no trespass" notice was generated by, or at the behest of, the Defendant. To date, the "no trespass" notice has not been cancelled, and it remains in effect to this day.

18. On or about May 14, 2002, the respective parties each made application to bring a criminal complaint for M.G.L. c. 265 § 13 assault and battery against the other in the Edgartown District Court. In that regard, on July 28, 2002, the Clerk Magistrate of the Dukes County District Court heard testimony from the parties, from the Edgartown Police, and from other witnesses, with respect to both applications for

6

criminal complaints.  Following all evidence offered, the
Clerk Magistrate found that there was probable cause to
believe Adrien Turcotte had committed an assault and battery
on the Plaintiff, but that there was not probable cause to
believe the Plaintiff had committed a crime and issue a
complaint against him.  Accordingly, the case against the
Defendant moved forward (Edgartown District Court Docket No.
0235CR0387), and the case against the Plaintiff was dropped
altogether.

19.  On September 12, 2002, the criminal complaint against
Adrien Turcotte was disposed of when he admitted in open
court to sufficient facts to find him guilty of M.G.L. c.
265, § 13 assault and battery on the Plaintiff.  The Court
accepted the Defendant's admission of sufficient facts and
continued the case without a finding for a period of one year
upon the payment of certain court costs.  (A copy of the
docket entry and Defendant's plea agreement are attached
hereto as Exhibit C.)

20.  The Plaintiff tried diligently to obtain other
employment, but was unable to find anything remotely
comparable to his Cornerstone position for a period of 28
months after his termination by Cornerstone.  As a result,
the Plaintiff remained unemployed in any full-time capacity
until September 2004, when he was hired by the Town of
Tisbury Public Works Department to work as a general
tradesman.  However, the Plaintiff's wage rate at this new
job is roughly one-third lower (i.e., $6.00/hour lower) than
his wage rate at Cornerstone in May 2002.  The Plaintiff's
losses as a result of the assault and battery and the
wrongful termination include, but are not limited to, lost

wages, lost employment benefits (including health insurance, retirement, and use of a company car), lost personal items (i.e., his personal tools which were wrongfully confiscated by Cornerstone and never returned to him after his termination), physical injury, out-of-pocket medical expenses, and emotional trauma.

21.  On June 3, 2004, Cornerstone filed a voluntary petition under chapter 11 of U.S. Bankruptcy Code, in the U.S. Bankruptcy Court for the Southern District of New York.  As of the date of this filing, that action is still pending.

22.  As a result of the Defendant's physical attack on the Plaintiff, the Plaintiff's subsequent firing by Cornerstone as a result of the Defendant's malicious actions, and the application filed by the Defendant for a criminal complaint against the Plaintiff that the Defendant without just cause or excuse, and with an intent to inflict injury, the Plaintiff has suffered severe emotional distress, manifested by depression, insomnia, loss of self-esteem, post traumatic stress syndrome, and other chronic symptoms.

### COUNT I
### Assault and Battery

23.  Plaintiff realleges the allegations contained in paragraphs 1 through 22.

24.  On May 14, 2002, the Defendant made a willful threat or attempt to inflict injury upon the Plaintiff, coupled with an apparent present ability to do so, when he approached the van

in which the Plaintiff was sitting and began striking it with his fists and pulling on the door handle.

25.   The Defendant made another willful threat or attempt to inflict injury upon the Plaintiff, when he followed the Plaintiff into the Cornerstone building with the apparent purpose of physically attacking him, as the Plaintiff sought to flee the Cornerstone back parking lot.

26.   The Defendant committed an unlawful touching of the Plaintiff on May 14, 2002, without justification or excuse, when he grabbed the Plaintiff and pulled him from the van, struck the Plaintiff repeatedly in the face with his closed fist, struck him in the face with a radio, knocked him to the ground, and then struck and kicked him while he was on the ground.

27.   The Defendant admitted in open court to sufficient facts to find him guilty of M.G.L. c. 265, § 13 assault and battery on the Plaintiff on May 14, 2002, as part of the Defendant's disposition in Commonwealth v. Adrien Turcotte (Docket No. 0235CR0387).   The Court accepted the Defendant's admission of sufficient facts and continued the case without a finding for a period of one year upon the payment of certain court costs.

28.   The Plaintiff has been injured as a result of the actions and conduct of the Defendant.

9

COUNT II

### Intentional or Reckless Infliction of
### Emotional Distress

29.  Plaintiff realleges the allegations contained in
paragraphs 1 through 28.

30.  The specific elements that must be proved to establish a
claim for intentional infliction of emotional distress are
(a) that the defendant intended to inflict emotional
distress, or knew or should have known that emotional
distress was the likely result of his conduct, (b) that the
defendant's conduct was extreme and outrageous, beyond all
possible bounds of decency and utterly intolerable in a
civilized community, (c) the actions of the defendant were
the cause of the plaintiff's distress, and (d) the emotional
distress suffered by the plaintiff was severe and of such a
nature that no reasonable person could be expected to endure
it.  Tetrault et al. v. Mahoney, Hawkes & Goldings et al.,
425 Mass. 456, 466 (1997).

31.  The Defendant intended to inflict emotional distress, or
knew or should have known that emotional distress was the
likely result of his conduct, when he physically and brutally
attacked the Plaintiff, who was his subordinate at
Cornerstone, without warning, provocation or justification on
May 14, 2002.

32.  The Defendant intended to inflict emotional distress, or
knew or should have known that emotional distress was the
likely result of his conduct, when he filed a false report
with Cornerstone Human Resource Division on the circumstances
relating to his altercation with the Plaintiff, in an effort

10

to escape culpability for his own malfeasance, and to shift
culpability to the Plaintiff and have his employment
terminated by Cornerstone.

33.   The Defendant intended to inflict emotional distress, or
knew or should have known that emotional distress was the
likely result of his conduct, when he filed a false report
with the Edgartown Police on the circumstances relating to
his altercation with the Plaintiff, in his effort to escape
culpability for his own malfeasance, and to initiate criminal
proceedings on his groundless charge lodged against the
Plaintiff.

34.   The Defendant's actions were extreme and outrageous,
beyond all possible bounds of decency and utterly intolerable
in a civilized community.

35.   As a result of the actions of the Defendant, the
Plaintiff suffered severe emotional distress of such a nature
that no reasonable person could be expected to endure it.

36.   The Plaintiff has been injured as a result of the
actions and conduct of the Defendant.

## COUNT III

### Intentional Interference with an
### Employment Relationship

37.   Plaintiff realleges the allegations contained in
paragraphs 1 through 36.

11

38.   The specific elements that must be proved in order to
establish a claim of intentional interference with an
employment relationship are (a) an advantageous employment
relationship; (b) the defendant's knowledge of such
relationship; (c) the defendant's interference, in addition
to being intentional, was improper in motive or means; and
(d) the plaintiff suffered economic harm as a result of the
defendant's conduct.  Ayash v. Dana-Farber Cancer Institute
et al., 443 Mass. 367, 394-95 (2005).

39.   The Plaintiff enjoyed an advantageous employment
relationship with Cornerstone for approximately 10 years
prior to May 14, 2002.

40.   In his capacity as the Plaintiff's immediate supervisor
at Cornerstone, the Defendant had knowledge of the
Plaintiff's employment relationship with Cornerstone.

41.   The Defendant interfered with the Plaintiff's employment
relationship with Cornerstone, by propounding false
allegations that the Plaintiff physically attacked him, by
tendering these false allegations to Cornerstone's Human
Resources Division, and by his other affirmative efforts to
have Cornerstone terminate its employment relationship with
the Plaintiff.  As a direct result of the Defendant's
efforts, Cornerstone did in fact terminate its emplyment
relationship with the Plaintiff, effective May 14, 2002.

42.   The Defendant's interference with this employment
relationship was intentional.

43.    The Defendant's interference with this employment
relationship was improper in motive or means, in that he
acted out of malevolence and/or actual malice (i.e., for a
spiteful malignant purpose unrelated to the legitimate
corporate interest).

44.    The Plaintiff has been injured as a result of the
actions and conduct of the Defendant.


## COUNT IV
### Defamation

45.    Plaintiff realleges the allegations contained in
paragraphs 1 through 44.

46.    The specific elements which must be proved in order to
establish a claim of defamation are (a) a statement by the
Defendant concerning the Plaintiff; (b) the statement could
damage the Plaintiff's reputation in the community, (c) the
Defendant was at fault for making the statement, and (d) the
statement either caused the Plaintiff economic loss or is
actionable without proof of economic loss. Ravnikar v.
Bogojavlensky, 438 Mass. 627, 629-30 (2003).  Statements that
are actionable without proof of economic loss include
statements that constitute libel, statements that charge the
Plaintiff with a crime, and statements that may prejudice the
plaintiff's profession or business.  Id.  If the statement
comes within one of these exceptions, a plaintiff may recover
noneconomic losses, including emotional injury and damage to
reputation.  Id.

47.  At various points on and after May 14, 2002, the
Defendant made untruthful, verbal and written statements
about the Plaintiff, alleging that the Plaintiff physically
attacked him with a motor vehicle and his fists.   The
Defendant made these untruthful statements to Cornerstone's
Human Resources Division, the Edgartown Police Department and
others.

48.  The Defendant's statements could damage the Plaintiff's
reputation, by lowering him in the estimation of the
community and by deterring third persons from associating or
dealing with him.

49.  The Defendant knew that these statements were false at
the time that he made them, and he was thereby at fault for
his intentional, tortious acts.

50.  The statements caused the Plaintiff economic loss, as
(a) Cornerstone terminated the Plaintiff's 10-year employment
as a direct result of the Defendant's statements; (b) the
Plaintiff was unable to find comparable work in the community
as a result of the Defendant's besmirchment of his
reputation; and (c) the employment that the Plaintiff
ultimately obtained after his protracted, albeit
unsuccessful, search was at roughly a one-third reduction in
wage rate, compared to his Cornerstone wage rate.

51.  Certain of the Defendant's defamatory statements about
the Plaintiff were libelous, as they expressed in writing
(e.g., the false and defamatory written statement the
Defendant submitted to Cornerstone).

14

52.    Certain of the Defendant's defamatory statements charged
the Plaintiff with a crime (e.g., the false statements made
by the Defendant to the Edgartown Police, pursuant to which
the Defendant made application for an assault and battery
criminal complaint to issue against the Plaintiff).

53.    The statements by the Defendant prejudiced the
Plaintiff's business and/or profession, as they alleged that
the Plaintiff had (a) committed a violent intentional tort,
(b) against his Cornerstone supervisor, (c) in the work place
during business hours, and (d) without provocation or
justification.

54.    The Plaintiff has been injured as a result of the
actions and conduct of the Defendant, including economic
loss, emotional injury and damage to reputation.

## COUNT V
### Malicious Prosecution

55.    Plaintiff realleges the allegations contained in
paragraphs 1 through 54.

56.    To establish a claim of malicious prosecution, the
Plaintiff must prove that the Defendant instituted criminal
proceedings against him with malice and without probable
cause, and that the proceedings terminated in the plaintiff's
favor.    E.g., Foley et al. v. Polaroid Corporation, 400 Mass.
82, 100 (1987).

15

57.   On May 14, 2002, the Defendant filed charges with the
Edgartown Police Department, alleging that the Plaintiff had
physically attacked him, and seeking the issuance of a
criminal complaint against the Plaintiff.

58.   The Defendant's motive in instituting this criminal
proceeding against John Child was malicious, in that it was
intentional, wrongful, without just cause or excuse, and with
an intent to inflict injury, as he was fully aware that the
Plaintiff had not committed the alleged crime.

59.   At the time that the Defendant instituted the criminal
proceeding against the Plaintiff, he was fully aware that the
Plaintiff had not committed the crime alleged, and that there
was no probable cause to believe that the Plaintiff had done
so.

60.   On July 28, 2002, the Clerk-Magistrate of the Edgartown
District Court dropped the charges against the Plaintiff
without issuing a criminal complaint, due to lack of probable
cause to believe the Plaintiff had committed a crime.

61.   By the actions and conduct of the Defendant, John Child
has been injured.


      WHEREFORE, the Plaintiffs pray this Court the following
relief:

   (1)   Enter judgment for the Plaintiffs on all Counts of
         their Verified Complaint.

16

(2) Enter judgment against the Defendant for compensatory
    damages, designed to give the Plaintiffs what they
    suffered in loss of compensation, medical bills, and
    pain and suffering.

(3) Enter judgment against the Defendant for consequential
    damages.

(4) Enter judgment against the Defendant for exemplary or
    punitive damages, due to malice.

(5) Award Plaintiffs interest and cost of this litigation,
    including reasonable attorney's fees; and

(6) Award such other and further relief as this Court
    deems just and equitable.

                          JOHN W. CHILD
                          By his Attorney,


                          _____
                          T. George Davis, Jr.  (BBO# 646667)
                          P.O. Box 1150
                          Vineyard Haven, MA    02568
                          Tel. (508) 693-8820


Dated:  May 13, 2005

17

CERTIFICATE OF SERVICE

I hereby certify that the above document is being served within the time required by Superior Court Standing Order No. 1-88 or by leave of the Regional Administrative Justice.

_____
T. George Davis, Jr.

05/14/2002  15:38    15086936    DANIELE & ROGERS    PAGE  03

## -- CORNERSTONE PROPANE PARTNERS --

### MANAGER OCCURRENCE REPORT

(Fax to 417-500-5406) 537 - 2589)

Call the Risk Management Dept. at the Lebanon Support Office if assistance is needed. **IMMEDIATE** investigation and reporting required!
Refer to Accident Reporting Policy for further details.

| Identity Type of Occurrence | Occurrence |
|---|---|
| ☐ EMPLOYEE INJURY - Report to Carrier also (according to policy) | Date: 5/14/02 |
| ☐ VEHICULAR - Attach Driver Report of Vehicle Occurrence | Time: 9:00 pm |
| ☐ GENERAL LIABILITY - Attach Employee Statement of Occurrence | Service Center Name Including City: Vinyard Propane |
| ☐ COMPANY PROPERTY - Forward any applicable Police reports | Service Center four digit Code: 7564 |

1. Has this occurrence been reported to the Risk Management Dept? Yes ☒ No ☐    If yes, to whom was report given and date. Susan Wood

2. Location of occurrence (include number, street, city, state):      County
Vineyard Propane, 7 Northline Rd, Edgartown, MA 02539 - Dukes

3. How did you learn of the occurrence? (Employee, Witness, 3rd party, Injured, etc.)

4. Investigated by civil authority? Yes ☒ No ☐ | Agency Name: Edgartown Police Dept. | Investigating Officer:

5. Immediate Drug Screen  Yes ☒  No ☐ | 5. a) Document reasons if drug screen not done:

6. Employee Involved:  First Name  Middle  Last  Male/Female
Adrien Turcotte / John Child - See attached

Home Address: Svok  City  State  Zip Code  Home Phone #:

7. Date of Birth: 4/30/63 | Date Hired | Social Security Number: 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 | Job Title MANAGER

8. Did injured lose work?  Yes ☐  No ☐  Date:  Hour:  AM/PM
Did injured return to work?  Yes ☐  No ☐  Date:  Hour:  AM/PM

9. Was first aid administered?  Yes ☐  No ☐  By whom?  Hospitalized? Yes ☐  No ☐

INJURIES OR PROPERTY DAMAGE TO OTHERS

10. Name: See attached

11. Address: Street  City  State  Zip Code  Phone #:

12. Describe injuries or property damaged:

### MANAGER INVESTIGATION RESULTS:

a) Provide your description of ALL DETAILS on how the occurrence happened, the extent of injuries, damage or loss. Identify other persons or companies involved. Attach additional pages if necessary. Be clear and specific.

See attached

b) Estimated cost of damages: $

c) What did the employee do or fail to do that contributed to the occurrence/accident?

d) What actions have or will be taken to prevent recurrence? (i.e., verbal or written counseling, safety training, installing safety devices, using proper safety equipment, additional training in proper procedures, repair, etc.). Include date these actions will take place.
Action        Date

Preparer('s) Name:  Address:  Daytime Telephone:
( )

Form completed by:  Date:  Telephone:

EXHIBIT
A -

On May 14 , 2002 at approximately 8:15 AM, John Child came into my office. I requested to speak with him regarding a customer complaint in reference to John's demeanor while conducting a service call over the weekend. When he arrived at my office in the Daniele & Rogers building, I requested that my Office Manager be present during the conversation.

I started by asking John if he remembered going on a service call at the Carroll residence in Oak Bluffs on Saturday. He said he did. I asked him several questions regarding Mrs. Carroll's complaint. He denied all of the allegations. At this time I informed John that his employment with the company is herby suspended until a complete review of the incident in question is conducted. I also asked him for his pager, keys to the buildings and company vehicle.

It was then that John smiled at me, gave me a "thumbs up" gesture and walked out of my office. I called his name several times and said I need the keys etc. John left the building and walked across the street to Vineyard Propane. Not sure what his state of mind or intentions were I followed. I could see that his company vehicle was parked in the rear parking area and he was walking toward it. I proceeded across the street asking John to wait for me, as he was approximately fifty feet ahead of me. He ignored me and kept walking.
He approached the company vehicle and opened the driver's door and got in the truck. As he was doing this I told him that he was not authorized to take the company vehicle and not to take it. At this point I was still walking toward the vehicle and was approximately three fourths of the way along side of the Vineyard Propane building (see drawing) and approximately twenty feet from the truck.

John started the truck, looked at me and smiled, placed the vehicle in gear, stepped on the accelerator and steered the truck directly at me and continued to accelerate. I tried to get out of the way however due to the area I was standing there was nowhere for me to go. John then struck me with the truck. As he approached I tried to get as close to the building as possible. I put my arms up to protect my head and facial area as I knew I would be struck by the driver's side mirror. As a result my right arm and elbow were struck by the driver's side mirror causing damage to the truck. As I rolled, the right side of my lower back struck the door handle. I had lost my balance and held onto the mirror assembly in an attempt to keep my feet and legs from becoming caught under the vehicle. During this time I was yelling at John to stop, but he refused. John continued to drive the truck as close to the building as possible while "pinning" me between the building and the truck during the entire length of the building, which is approximately sixty feet in length. When John reached the end of the building and the front parking area he stopped the truck.

I told John several times that I was going to call the police. I also motioned to Lynn Daniels who was standing in the front office to come outside, as I wanted her to call the police department. It was unclear as to what he may do with the vehicle and my concern for others safety I remained outside. At that time John placed the truck in gear again and drove to the rear parking area. I walked to the rear lot and he stopped and exited the truck. He walked directly toward me in an aggressive nature. I noticed that he was carrying the company cell phone in his hand. As he approached me I told him I was calling the police and reached for the cell phone.

John pulled away then struck me in the left side of my face with his fist. At this point I started walking backward to get away from him. He continued to advance on me and swing. He struck me in the face several times and head. In an effort to protect myself from his advancements, I responded in self-defense and struck him to slow him down. He continued to strike me while I was trying to hold him down and get the attention of some of the employees that were inside the building. John then went inside the building, as did I and called the authorities.

EXHIBIT
A-2

05/14/2002  15:38    15006936S         DANIELE & ROGERS           PAGE  02



Vineyard Propane

Daniele : Rogers

EXHIBIT
A-3.



May 17, 2002

Mr. John Child
17 Mariner Rd
Vineyard Haven, MA  02568

Dear Mr. Child:

On May 14, 2002, you were placed on suspension pending an investigation into a complaint made against you by one of our customers. Your insubordination towards your manager when he requested that you return all company keys, cell phone, and other company property while on suspension is unacceptable. Your behavior in operating a company vehicle following your suspension and after being told not to do so, as well as the resulting intentional property damage you caused to the vehicle, also are clear violations of the company's standards of conduct.

Cornerstone Propane does not tolerate and will not tolerate the type of conduct you exhibited on May 14. Therefore, the decision has been made to terminate your employment effective May 14, 2002.

Sincerely,

*Danny Fuller, by DT*

Danny J. Fuller
Director of Human Resources
CornerStone Propane

DJF/dlt

EXHIBIT
B

# CRIMINAL DOCKET

| | |
|---|---|
| **DOCKET NO.** 0235CR000387 | **ATTORNEY NAME** Lanhoshi |

**COURT DIVISION**
Edgartown

☐ INTERPRETER REQUIRED

**DATE and JUDGE**

**DOCKET ENTRY**
☐ Attorney appointed (S.J.C. R. 3:10)
☐ Atty denied and Deft Adv. of per 211D §2A
☐ Waiver of counsel found after colloquy

**NAME, ADDRESS and ZIP CODE OF DEFENDANT**
TURCOTTE, ADRIEN
PO BOX 729
VINEYARD HAVEN, MA 02568

**Terms of release set:**
☐ PR    ☐ Bail:
☐ Held (276 §58A)
☐ See for special conditions

**Arraigned and advised:**
☐ Potential of bail revocation (276 §58)
☐ Right to bail review (27.1 § 58)
☐ Right to drug exam (111E §10)

**DEFT. DOB AND SEX**
04/30/1963    M

**DATE OF OFFENSE(S)**
05/14/2002

**PLACE OF OFFENSE(S)**
EDGARTOWN

9-12-02
Macy

**Advised of right to jury trial:**
☐ Does not waive
☑ Waiver of jury trial found after colloquy

**COMPLAINANT**

**POLICE DEPARTMENT (if applicable)**
EDGARTOWN PD

**DATE OF COMPLAINT**
05/29/2002

**RETURN DATE AND TIME**
06/28/2002 08:30:00

☐ Advised of trial rights as pro se (S.J.C. R. 4)
☐ Advised of right of appeal to Appeals Ct (R. 28)

**COUNT/OFFENSE**
1. 265/13A/B  A&B c265 §13A

| FINE | SURFINE | COSTS | RESTITUTION | VAN ASSESSMENT |
|---|---|---|---|---|
| | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**
9-12-02    Macy

**DISPOSITION METHOD**
☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**SENTENCE OR OTHER DISPOSITION**
☑ Sufficient facts found but continued without guilty finding until: 9-12-03
☐ Probation    ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
  ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

**JUDGE**

**DATE**

**COUNT/OFFENSE**

| FINE | SURFINE | COSTS | RESTITUTION | VAN ASSESSMENT |
|---|---|---|---|---|
| | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation    ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
  ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

**JUDGE**

**DATE**

**COUNT/OFFENSE**

| FINE | SURFINE | COSTS | RESTITUTION | VAN ASSESSMENT |
|---|---|---|---|---|
| | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation    ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
  ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

**JUDGE**

**DATE**

**COUNT/OFFENSE**

| FINE | SURFINE | COSTS | RESTITUTION | VAN ASSESSMENT |
|---|---|---|---|---|
| | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation    ☐ Pretrial Probation (276 §87) -
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
  ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

A True Copy Attest
Thomas A. Teller
Clerk/Magistrate

**JUDGE**

**DATE**

**COURT ADDRESS**
Edgartown District Court
81 Main Street
P.O. Box 1284 Edgartown, MA 02539

A TRUE COPY  Y  CLERK-MAGISTRATE/ASST. CLERK    ON (DATE)

EXHIBIT
C-1

| TENDER OF PLEA OR ADMISSION WAIVER OF RIGHTS | DOCKET NO. 22-387 | | NO. OF COUNTS 1 | Trial Court of Massachusetts District Court Department |
|---|---|---|---|---|
| INSTRUCTIONS: This form must be typed or printed clearly, completed prior to the Pretrial Hearing, signed by both counsel and submitted to the court by the defendant at or before the Pretrial Hearing. | NAME OF DEFENDANT Adrien Turcotte | | | COURT DIVISION Edgartown District Court Main St. - P.O. Box 1284 Edgartown, MA. 02539 |

**SECTION I** | TENDER OF PLEA

Defendant in this case hereby tenders the following: PLEA OF GUILTY ☒ ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GUILT conditioned on the dispositional terms indicated below. *Include all proposed terms (guilty finding, finding of sufficient facts, continued without finding, sentence of incarceration, split sentence or suspended sentence, etc.). Number each count and specify terms for each count separately.*

| COUNT NO. | DEFENDANT'S DISPOSITIONAL TERMS (Check "Yes" if Prosecution agrees – Check "No" if Prosecution disagrees) | | PROSECUTOR'S RECOMMENDATION (Required if Prosecutor disagrees with terms) |
|---|---|---|---|
| 1 | CWOF 1year - Admin. Probation $200 CC  $50 VWF — | YES ☒  NO ☐ | Transfer Probation |
| | — To be dismissed at end of 1year.. | YES ☐  NO ☐ | |
| | | YES ☐  NO ☐ | |
| | | YES ☐  NO ☐ | |
| | | YES ☐  NO ☐ | |
| | | YES ☐  NO ☐ | |

WE HAVE CONSULTED WITH THE PROBATION DEPARTMENT REGARDING ANY PROBATION TERMS SET FORTH ABOVE.

| SIGNATURE OF DEFENSE COUNSEL X | DATE 9/12/02 | SIGNATURE OF PROSECUTING OFFICER | DATE 9-13- |
|---|---|---|---|

**SECTION II** | PLEA OR ADMISSION ACCEPTED BY THE COURT

The Court ☒ ACCEPTS the tendered Plea or Admission on defendant's terms set forth in Section I, and will impose sentence in accordance with said terms, subject to submission of defendant's written WAIVER (see Section IV on reverse of this form), completion of the required COLLOQUY, a determination that there is a FACTUAL BASIS for the Plea or Admission, and notice of ALIEN RIGHTS.

**SECTION III** | PLEA OR ADMISSION REJECTED BY THE COURT

The Court ☐ REJECTS the defendant's dispositional terms set forth above and, in accordance with Mass. R. Crim. P. 12(c)(6), has set forth to the defendant the dispositional terms it would find acceptable, to wit:

**DEFENDANT'S DECISION IF COURT REJECTS TENDERED PLEA OR ADMISSION:**

☐ Defendant WITHDRAWS the tendered Plea or Admission the parties must complete and file a Pretrial Conference Report, a Pretrial Hearing must be conducted and a date scheduled, if necessary.

☐ Defendant ACCEPTS terms set forth by the Court, a Plea Admission will be accepted by the court and dispositional terms imposed, subject to submission of defendant's written WAIVER (see Section IV on reverse of this form), completion of the required ora. COLLOQUY, a determination that there is a factual basis for the Plea or Admission, and notice of ALIEN RIGHTS.

| SIGNATURE OF JUDGE ACCEPTING OR REJECTING PLEA OR ADMISSION | DATE 9/11/.. | SIGNATURE OF DEFENSE COUNSEL (if... |
|---|---|---|

**EXHIBIT**

C-2

**SECTION IV      DEFENDANT'S WAIVER OF RIGHTS (G.L.c. 263, § 6) & ALIEN RIGHTS NOTICE (G.L.c. 278, § 29D)**

I, the undersigned defendant, understand and acknowledge that I am voluntarily giving up the right to be tried by jury or a judge without a jury on these charges.

I have discussed my constitutional and other rights with my attorney. I understand that the jury would consist of jurors chosen at random from the community, and that I could participate in selecting those jurors, who would determine unanimously whether I was guilty or not guilty. I understand that by entering my plea of guilty or admission, I will also be giving up my right to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to testify, or provide evidence against myself by asserting my privilege against self-incrimination; all with the assistance of my defense attorney; and to be presumed innocent until proven guilty by the prosecution beyond a reasonable doubt.

I am aware of the nature and elements of the charge or charges to which I am entering my guilty plea or admission. I am also aware of the nature and range of the possible sentence or sentences.

My guilty plea or admission is not the result of force or threats. It is not the result of assurances or promises, other than any agreed-upon recommendation by the prosecution, as set forth in Section I of this form. I have decided to plead guilty, and admit to sufficient facts, voluntarily and freely.

I am not now under the influence of any drug, medication, liquor or other substance that would impair my ability to fully understand the constitutional and statutory rights that I am waiving when I plead guilty, or admit to sufficient facts to support a finding of guilty.

I understand that if I am not a citizen of the United States, conviction of this offense may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF DEFENDANT | DATE |
|---|---|
| X | 9-12-0? |

**SECTION V      DEFENSE COUNSEL'S CERTIFICATE (G.L.c. 278, § 29D)**

As required by G.L.c. 218, § 26A, I certify that as legal counsel to the defendant in this case, I have explained to the defendant the above-stated provisions of law regarding the defendant's waiver of jury trial and other rights so as to ensure the defendant to tender his or her plea of guilty or admission knowingly, intelligently and voluntarily.

| SIGNATURE OF DEFENSE COUNSEL | B.B.O. NO. | DATE |
|---|---|---|
| X | 639569 | 9/12/02 |

**SECTION VI      JUDGE'S CERTIFICATE**

I, the undersigned Justice of the District Court, addressed the defendant directly in open court. I made appropriate inquiry into the education and background of the defendant and am satisfied that he or she fully understands all of his or her rights as set forth in Section IV of this form, and that he or she is not under the influence of any drug, medication, liquor or other substance that would impair his or her ability to fully understand those rights. I find, after an oral colloquy with the defendant, that the defendant has knowingly, intelligently and voluntarily waived all of his or her rights as explained during these proceedings and as set forth in this form.

After a hearing, I have found a factual basis for the charge(s) to which the defendant is pleading guilty or admitting. I have found that the facts as related by the prosecution and admitted by the defendant would support a conviction on the charges to which the plea or admission is made.

I further certify that the defendant was informed and advised that if he or she is not a citizen of the United States, a conviction of the offense with which he or she was charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF JUDGE | DATE |
|---|---|
| X | |

**EXHIBIT C-3**

CIVIL ACTION COVER SHEET | Commonwealth of Massachusetts SUPERIOR COURT DEPARTMENT County: DUKES | Docket Number

PLAINTIFF(S) John W. Child

DEFENDANT(S) Adrien R. Turcotte

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
T. George Davis, Jr.    (508)
P.O. Box 1150, Vineyard Haven, MA 02568    693-8820
Board of Bar Overseers number: 646667

ATTORNEY (if known)

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After tri ) (X)
- [ ] 5. F05 Reactivated after rescript;relief from judgment Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B04 | Personal Injury | (F) | ( ) Yes   (X) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
### (Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................ $ ,000
2. Total Doctor expenses ............................ $ ,000
3. Total chiropractic expenses ........................ $ 0
4. Total physical therapy expenses .................... $ 0
5. Total other expenses (describe) .................... $ 0
   Subtotal $ ,000
B. Documented lost wages and compensation to date ........ $ 6,000
C. Documented property damages to date ................. $ ,000
D. Reasonably anticipated future medical and hospital expenses $ 0
E. Reasonably anticipated lost wages .................... $ 7,000
F. Other documented items of damages (describe)
   Emotional Injury and Damage to Reputation    $ 150,000
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
Physical injury, lost wages, lost employment benefits, out-of-pocket medical expenses, lost personalty, emotional distress, defamation of character

$ ......
TOTAL: $ 288,000

## CONTRACT CLAIMS
### (Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL    $ ......

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    None

I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Signature of Attorney of Record _____    DATE: 5/13/05

A.O.S.C. 2003

COMMONWEALTH OF MASSACHUSETTS

DUKES, ss.                                   SUPERIOR COURT DEPARTMENT
                                             CIVIL ACTION NO. DUCV2005-00029

```
                                         )
JOHN W. CHILD                            )
                                         )
                  Plaintiff              )
                                         )
v.                                       )
                                         )
ADRIEN R. TURCOTTE and                   )
TITAN PROPANE LLC d/b/a VINEYARD         )
PROPANE                                  )
                                         )
                  Defendants             )
_____)
```

### AMENDED COMPLAINT

#### INTRODUCTION

Plaintiff John W. Child hereby complains of the
Defendant Adrien Turcotte ("Turcotte") that Turcotte is
guilty of assault and battery, intentional infliction of
emotional distress, intentional interference with an
employment relationship, defamation, and malicious
prosecution, for which Plaintiff hereby seeks damages
pursuant to the applicable laws of the Commonwealth of
Massachusetts.

Plaintiff hereby complains of Defendant Titan Propane
LLC d/b/a Vineyard Propane ("Titan") that it is guilty of the
aforementioned malfeasance of Turcotte, under the doctrine of
respondeat superior, for which Plaintiff seeks damages
pursuant to the applicable laws of Massachusetts.

A True Copy,

Attest:

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

1

1999 and 2002, during which time he served as the Plaintiff's immediate supervisor.

7.   Vineyard Propane compensated the Plaintiff for his employment, with weekly wages based on the number of hours worked, overtime compensation at the rate of 1.5 times his hourly rate for work in excess of forty (40) hours per week, and a comprehensive benefits package, including but not limited to a contributory retirement plan which Vineyard Propane matched dollar-for-dollar, paid vacation time, and a joint contributory health and hospitalization insurance plan that provided coverage for the Plaintiff and his wife.

8.   On Sunday, May 12, 2002, the Plaintiff was on duty to perform emergency services for Vineyard Propane customers, when he received an emergency call to inspect the gas service at the home of one such customer. The Plaintiff was qualified to perform these services, as he was the holder of a Massachusetts Commercial Driver's License (CDL) (License No. S55559422), a Journeyman Plumber's License (License No. 23862), and a Plumbers and Gas Fitters License as a liquid propane gas installer (License No. 1073). In addition, the Plaintiff was a licensed Oil Burner Technician (License No. BU 025876).

9.   In response to the emergency call, the Plaintiff immediately conducted an inspection at the customer's residence and determined that the gas system was dangerous to the residents, because of numerous plumbing and gas code violations, including but not limited to a leaking propane tank, inadequate and improperly installed ventilation, improperly sized piping, the absence of required safety

3

equipment, and the proximity of gas systems to electrical services. The Plaintiff informed the customer of the danger and shut off the gas service at the tank as a precautionary measure. The Plaintiff then advised the resident to call Vineyard Propane during normal business hours the following day and have the appropriate repairs made, to bring the system into gas and plumbing code compliance before turning the gas service back on.

10. On Monday, May 13, 2002, during his regular hours of employment, the Plaintiff was summoned to meet with Turcotte in his office. When the Plaintiff arrived at Turcotte's office, however, the Defendant was not there, and the Plaintiff was instructed to return the following morning.

11. On the morning of Tuesday, May 14, 2002, the Plaintiff met with Turcotte in Turcotte's office. During the course of this meeting, Turcotte suspended the Plaintiff indefinitely without pay, effective immediately, allegedly for "inconveniencing" the Vineyard Propane customer on May 12, 2002. Although the Plaintiff disagreed with Turcotte's assessment of the appropriate course of action in response to the safety issues discovered during the May 12, 2002 emergency call, and he disagreed with the propriety of Turcotte suspending him without pay under those circumstances, the Plaintiff did nothing during this meeting to incite or provoke Turcotte to violence. (Upon information and belief, Turcotte subsequently caused the customer's service to be restored without the requisite repairs being made. Turcotte was unqualified to make any such determination, however, as he was neither a licensed journeyman plumber nor a licensed LP gas installer.

4

Moreover, upon information and belief, Turcotte did not have
a licensed journeyman plumber or licensed LP gas installer
inspect or correct the reported problem before restoring the
customer's service.}

12. At the conclusion of the meeting, the Plaintiff left
Turcotte's office and went directly to the Vineyard Propane
parking lot adjacent to the building, to retrieve his
personal effects from the company van. Soon after the
Plaintiff entered the van to collect his things, Turcotte
appeared and began beating his fists against the van window
and pulling the driver's side door handle. As a result of
Turcotte's actions and demeanor, the Plaintiff became
concerned for his personal safety and did not want this
spectacle viewed by his fellow workers, so he moved the van
to the rear of the building and parked it there.

13. Turcotte followed the Plaintiff as he drove a short
distance to the rear of the building. As Turcotte approached
the van again; the Plaintiff opened the door, whereupon
Turcotte immediately grabbed him by his clothing, dragged him
from the vehicle and began striking him in the face with his
closed fist. After punching the Plaintiff several times,
Turcotte then took the radio the Plaintiff was holding in his
hand and used it as a weapon to further strike the Plaintiff
in the face. At some point during this portion of the
attack, Turcotte broke the Plaintiff's eyeglasses.

14. Continuing the attack, Turcotte then knocked the
Plaintiff to the ground and began kicking and hitting him.
Finally, the Plaintiff was able to escape, and he returned to
the building. As he did, Turcotte pursued him, in an effort

to continue the attack. However, upon information and
belief, Turcotte was restrained by a third party from doing
so, near the entrance to the building.

15. Turcotte's attack on the Plaintiff was done with malice
in that it was intentional, wrongful, without just cause or
excuse, and with an intent to inflict injury.

16. Once inside the building, the Plaintiff immediately
placed an emergency 911 telephone call and requested that a
police officer and an ambulance be sent to the scene.

17. The Plaintiff was transported by ambulance to the
Martha's Vineyard Hospital Emergency Room on the morning of
May 14, 2002, where he was diagnosed with facial trauma,
contusions of the nose and forehead, and a concussion, as a
result of the attack.

18. Shortly after his attack on the Plaintiff, Turcotte
concocted and published an utterly false version of events.
In that regard, Turcotte knowingly filed false reports with
the Edgartown Police Department and with Cornerstone's Human
Resources Division, in which he alleged as follows: that it
was the Plaintiff, and not he, who was the aggressor; that
the Plaintiff drove the company van in such a way as to
strike Turcotte and had attempted to run over him; that the
Plaintiff then repeatedly struck Turcotte with his fists; and
that Turcotte struck the Plaintiff only in self-defense.  (A
copy of the Defendant's May 14, 2002 written statement
submitted to Cornerstone's Human Resources Division is
attached hereto as Exhibit A.)

6

19. At the time that he made these statements, Turcotte kre⁄
them to be complete fabrications, designed to impugn the
Plaintiff's character and reputation.

20. By letter dated May 17, 2002 and received on May 21,
2002, the Plaintiff was notified by Cornerstone, through its
Director of Human Services, that he was discharged from
employment, effective May 14, 2002. The reasons given for
the discharge were that the Plaintiff had allegedly been
insubordinate and that he had allegedly assaulted his
supervisor (i.e., Turcotte). (A copy of the May 17, 2002
Cornerstone letter is attached hereto as Exhibit B.)
Significantly, however, neither the Cornerstone Director of
Human Services nor anyone else in Cornerstone management had
made any effort whatsoever to contact the Plaintiff and
obtain his version of the incident, but rather had relied
solely only Turcotte's malicious fabrications.

21. On May 15, 2002, the Edgartown Police served the
Plaintiff with a M.G.L. c. 266, § 120 "no trespass" notice,
stating that the Plaintiff was no longer allowed to
physically enter the Vineyard Propane property, and that he
would be arrested and/or prosecuted for trespassing if he
were to violate the notice. Upon information and belief,
this "no trespass" notice was generated by, or at the behest
of, Turcotte. To date, the "no trespass" notice has not been
cancelled, and it remains in effect to this day.

22. On or about May 14, 2002, the respective parties each
made application to bring a criminal complaint for M.G.L. c.
265 § 13 assault and battery against the other in the
Edgartown District Court. In that regard, on July 28, 2002,

7

the Clerk Magistrate of the Dukes County District Court held
a probable cause hearing, in which he heard testimony from
the parties, the Edgartown Police, and other witnesses with
respect to both applications for criminal complaints.
Following all evidence offered, the Clerk Magistrate found
that there was probable cause to believe Adrien Turcotte had
committed an assault and battery on the Plaintiff, but that
there was not probable cause to believe the Plaintiff had
committed any alleged crime.  Accordingly, the Court issued a
complaint against the Defendant (Edgartown District Court
Docket No. 0235CR0387), and dropped the case against the
Plaintiff altogether.

23.  On September 12, 2002, the criminal complaint against
Adrien Turcotte was disposed of when he admitted in open
court to sufficient facts to find him guilty of M.G.L. c.
265, § 13 assault and battery on the Plaintiff.  The Court
accepted Turcotte's admission of sufficient facts and
continued the case without a finding for a period of one year
upon the payment of certain court costs.  (A copy of the
docket entry and Turcotte's plea agreement are attached
hereto as Exhibit C.)

24.  The Plaintiff tried diligently to obtain other
employment, but was unable to find anything remotely
comparable to his Vineyard Propane position for a period of
28 months after his termination.  As a result, the Plaintiff
remained unemployed in any full-time capacity until September
2004, when he was hired by the Town of Tisbury Public Works
Department to work as a general tradesman.  However, the
Plaintiff's wage rate at this new job is roughly one-third

8

lower (i.e., $6.00/hour lower) than his wage rate at Vineyard
Propane in May 2002.

25.  The Plaintiff's losses as a result of the assault and
battery, the wrongful termination, and the application filed
by Turcotte for a criminal complaint against the Plaintiff
without just cause or excuse and with an intent to inflict
injury, include, but are not limited to, physical injury,
out-of-pocket medical expenses, lost wages, lost employment
benefits (including health insurance, retirement, and use of
a company car), lost personal items (i.e., the Plaintiff's
personal tools which were wrongfully confiscated by Vineyard
Propane and never returned to him after his termination),
damage to reputation, and emotional trauma manifested by
depression, insomnia, loss of self-esteem, post traumatic
stress syndrome, and other chronic symptoms.

26.  On or about June 3, 2004, Cornerstone filed a chapter 11
bankruptcy petition and a plan of reorganization in the U.S.
Bankruptcy Court for the Southern District of New York.  On
or about December 20, 2004, Cornerstone emerged from chapter
11 bankruptcy protection and shortly thereafter changed its
name to Titan Propane LLC.

## COUNT I

### Assault and Battery

27.  Plaintiff realleges the allegations contained in
paragraphs 1 through 26.

28.  On May 14, 2002, the Defendant made a willful threat or
attempt to inflict injury upon the Plaintiff, coupled with a
apparent present ability to do so, when he approached the va
in which the Plaintiff was sitting and began striking it wit
his fists and pulling on the door handle.

29.  The Defendant made another such willful threat or
attempt to inflict injury upon the Plaintiff, when he
accosted the Plaintiff a second time in the Vineyard Propane
rear parking lot.

30.  The Defendant made a third willful threat or attempt to
inflict injury upon the Plaintiff, when he followed the
Plaintiff into the Vineyard Propane office building with the
apparent purpose of physically attacking him, as the
Plaintiff sought to flee the Vineyard Propane rear parking
lot.

31.  The Defendant committed an unlawful touching of the
Plaintiff on May 14, 2002, without justification or excuse,
when he grabbed the Plaintiff and pulled him from the van,
struck the Plaintiff repeatedly in the face with his closed
fist, struck him in the face with a radio, knocked him to the
ground, and then struck and kicked him while he was on the
ground.

32.  The Defendant admitted in open court to sufficient facts
to find him guilty of M.G.L. c. 265, § 13 assault and battery
on the Plaintiff on May 14, 2002, as part of the Defendant's
disposition in Commonwealth v. Adrien Turcotte (Docket No.
0235CR0387).  The Court accepted the Defendant's admission of

10

sufficient facts and continued the case without a finding for a period of one year upon the payment of certain court costs

33. The Plaintiff has been injured as a result of the actions and conduct of the Defendant.

## COUNT II

### Intentional or Reckless Infliction of Emotional Distress

34. Plaintiff realleges the allegations contained in paragraphs 1 through 33.

35. The specific elements that must be proved to establish a claim for intentional infliction of emotional distress are (a) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, (b) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (c) the actions of the defendant were the cause of the plaintiff's distress, and (d) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. Tetrault et al. v. Mahoney, Hawkes & Goldings et al., 425 Mass. 456, 466 (1997).

36. The Defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, when he physically and brutally attacked the Plaintiff, who was his subordinate at Vineyard

11

Propane, without warning, provocation or justification on May
14, 2002.

37. The Defendant intended to inflict emotional distress, o
knew or should have known that emotional distress was the
likely result of his conduct, when he filed a false report
with Cornerstone Human Resource Division on the circumstances
relating to his altercation with the Plaintiff, in an effort
to escape culpability for his own malfeasance, and to shift
culpability to the Plaintiff and have his employment
terminated.

38. The Defendant intended to inflict emotional distress, or
knew or should have known that emotional distress was the
likely result of his conduct, when he filed a false report
with the Edgartown Police on the circumstances relating to
his altercation with the Plaintiff, in his effort to escape
culpability for his own malfeasance, and to initiate crimina.
proceedings on his groundless charge lodged against the
Plaintiff.

39. The Defendant's actions were extreme and outrageous,
beyond all possible bounds of decency and utterly intolerable
in a civilized community.

40. As a result of the actions of the Defendant, the
Plaintiff suffered severe emotional distress of such a nature
that no reasonable person could be expected to endure it.

41. The Plaintiff has been injured as a result of the
actions and conduct of the Defendant.

12

## COUNT III

### Intentional Interference with an
### Employment Relationship

42.   Plaintiff realleges the allegations contained in
paragraphs 1 through 41.

43.   The specific elements that must be proved in order to
establish a claim of intentional interference with an
employment relationship are (a) an advantageous employment
relationship; (b) the defendant's knowledge of such
relationship; (c) the defendant's interference, in addition
to being intentional, was improper in motive or means; and
(d) the plaintiff suffered economic harm as a result of the
defendant's conduct.  Ayash v. Dana-Farber Cancer Institute
et al., 443 Mass. 367, 394-95 (2005).

44.   The Plaintiff enjoyed an advantageous employment
relationship with Vineyard Propane for approximately 10 years
prior to May 14, 2002.

45.   In his capacity as the Plaintiff's immediate supervisor
at Vineyard Propane, the Defendant had knowledge of the
Plaintiff's employment relationship with Vineyard Propane.

46.   The Defendant interfered with the Plaintiff's employment
relationship with Vineyard Propane, by propounding false
allegations that the Plaintiff physically attacked him, by
tendering these false allegations to Cornerstone's Human
Resources Division, and by his other affirmative efforts to
have Cornerstone terminate its employment relationship with
the Plaintiff.  As a direct result of the Defendant's

13

efforts, Cornerstone did in fact terminate its employment relationship with the Plaintiff, effective May 14, 2002.

47. The Defendant's interference with this employment relationship was intentional.

48. The Defendant's interference with this employment relationship was improper in motive or means, in that he acted out of malevolence and/or actual malice (i.e., for a spiteful malignant purpose unrelated to a legitimate corporate interest).

49. The Plaintiff has been injured as a result of the actions and conduct of the Defendant.


### COUNT IV
### Defamation

50. Plaintiff realleges the allegations contained in paragraphs 1 through 49.

51. The specific elements which must be proved in order to establish a claim of defamation are (a) a statement by the Defendant concerning the Plaintiff; (b) the statement could damage the Plaintiff's reputation in the community, (c) the Defendant was at fault for making the statement, and (d) the statement either caused the Plaintiff economic loss or is actionable without proof of economic loss. Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003). Statements that are actionable without proof of economic loss include statements that constitute libel, statements that charge the

14

Plaintiff with a crime, and statements that may prejudice the
plaintiff's profession or business. Id. If the statement
comes within one of these exceptions, a plaintiff may recover
noneconomic losses, including emotional injury and damage to
reputation. Id.

52. At various points on and after May 14, 2002, the
Defendant made untruthful, verbal and written statements
about the Plaintiff, alleging that the Plaintiff physically
attacked him with a motor vehicle and his fists. The
Defendant made these untruthful statements to Cornerstone's
Human Resources Division, the Edgartown Police Department and
others.

53. The Defendant's statements damaged the Plaintiff's
reputation, by lowering him in the estimation of the
community and by deterring third persons from associating or
dealing with him.

54. The Defendant knew that these statements were false at
the time that he made them, and he was thereby at fault for
his intentional, tortious acts.

55. The statements caused the Plaintiff economic loss, as
(a) Cornerstone terminated the Plaintiff's 10-year employment
as a direct result of the Defendant's statements; (b) the
Plaintiff was unable to find comparable work in the community
as a result of the Defendant's besmirchment of his
reputation; and (c) the employment that the Plaintiff
ultimately obtained after his protracted, albeit
unsuccessful, search was at roughly a one-third reduction in
wage rate, compared to his Cornerstone wage rate.

15

56.  Certain of the Defendant's defamatory statements about the Plaintiff were libelous, as they expressed in writing (e.g., the false and defamatory written statement the Defendant submitted to Cornerstone).

57.  Certain of the Defendant's defamatory statements charged the Plaintiff with a crime (e.g., the false statements made by the Defendant to the Edgartown Police, pursuant to which the Defendant made application for an assault and battery criminal complaint to issue against the Plaintiff).

58.  The statements by the Defendant prejudiced the Plaintiff's business and/or profession, as they alleged that the Plaintiff had (a) committed a violent intentional tort, (b) against his Vineyard Propane supervisor, (c) in the work place during business hours, and (d) without provocation or justification.

59.  The Plaintiff has been injured as a result of the actions and conduct of the Defendant, including economic loss, emotional injury and damage to reputation.

## COUNT V
### Malicious Prosecution

60.  Plaintiff realleges the allegations contained in paragraphs 1 through 59.

61.  To establish a claim of malicious prosecution, the Plaintiff must prove that the Defendant instituted criminal

16

proceedings against him with malice and without probable
cause, and that the proceedings terminated in the plaintiff'
favor.  E.g., Foley et al. v. Polaroid Corporation, 400 Mass
82, 100 (1987).

62.  On May 14, 2002, the Defendant filed charges with the
Edgartown Police Department, alleging that the Plaintiff had
physically attacked him, and seeking the issuance of a
criminal complaint against the Plaintiff.

63.  The Defendant's motive in instituting this criminal
proceeding against John Child was malicious, in that it was
intentional, wrongful, without just cause or excuse, and with
an intent to inflict injury, as he was fully aware that the
Plaintiff had not committed the alleged crime.

64.  At the time that the Defendant instituted the criminal
proceeding against the Plaintiff, he was fully aware that the
Plaintiff had not committed the crime alleged, and that there
was no probable cause to believe that the Plaintiff had done
so.

65.  On July 28, 2002, the Clerk-Magistrate of the Edgartown
District Court dropped the charges against the Plaintiff
without issuing a criminal complaint, due to lack of probable
cause to believe the Plaintiff had committed a crime.

66.  By the actions and conduct of the Defendant, John Child
has been injured.

17

## COUNT VI

### Respondeat Superior

67.  Plaintiff realleges the allegations contained in paragraphs 1 through 66.

68.  Adrien Turcotte was employed by Vineyard Propane betweer 1999 and 2002 as its Operations Manager, during which time he served as the Plaintiff's immediate supervisor.

69.  Each and every tort alleged in this action to have beer committed by Defendant Adrien Turcotte against the Plaintiff occurred during the course of, and within the scope of, Defendant's employment by Vineyard Propane.

70.  The Plaintiff has been injured as a result of the actions and conduct of Vineyard Propane, or alternatively as a result of Vineyard Propane's failure to act, which injuries include physical injury, economic loss, emotional injury and damage to reputation.


WHEREFORE, the Plaintiff prays this Court the following relief:

(1)  Enter judgment for the Plaintiff on all Counts of his Verified Complaint.

(2)  Enter judgment against the Defendants for compensatory damages, designed to give the Plaintiff what he suffered in loss of compensation, medical bills, and pain and suffering.

18

(3)  Enter judgment against the Defendants for
     consequential damages.

(4)  Enter judgment against the Defendants for exemplary or
     punitive damages, due to malice.

(5)  Award Plaintiff interest and cost of this litigation,
     including reasonable attorney's fees; and

(6)  Award such other and further relief as this Court
     deems just and equitable.

                          JOHN W. CHILD
                          By his Attorney,


                          _____
                          T. George Davis, Jr. (BBO# 646657.)
                          P.O. Box 1150
                          Vineyard Haven, MA   02568
                          Tel. (508) 693-8820


Dated:   August 2, 2005

CERTIFICATE OF SERVICE

I hereby certify that the above document is being served within the time required by Superior Court Standing Order No. 1-88 or by leave of the Regional Administrative Justice.

_____
T. George Davis, Jr.

05/14/2002   15:38    15086936                    DANIELE & ROGERS                        PAGE   03

## — CORNERSTONE PROPANE PARTNERS —
### MANAGER OCCURRENCE REPORT

(Fax to 417-500-6400) 537-2379

Call the Risk Management Dept. at the Lebanon Support Office if assistance is needed. **IMMEDIATE** Investigation and reporting required.
Refer to Accident Reporting Policy for further details.

| Identify Type of Occurrence | Occurrence |
|---|---|
| ☐ EMPLOYEE INJURY - Report to Carrier also (according to policy) | Date: 5/14/02 |
| ☐ VEHICULAR - Attach Driver Report of Vehicle Occurrence | Time: 4:00 pm |
| ☐ GENERAL LIABILITY - Attach Employee Statement of Occurrence | Service Center Name Including City: Vineyard Propane |
| ☐ COMPANY PROPERTY - Forward any applicable Police reports | Service Center four digit Code: 7564 |

1. Has this occurrence been reported to the Risk Management Dept? ☐ Yes ☐No   If yes, to whom was report given and date. Susan Wood

2. Location of occurrence (Include number, street, city, state): Vineyard Propane, 7 Northline Rd, Edgartown, M# 02539 – Dukes   County

3. How did you learn of the occurrence? (Employee, witness, Third party, had injured, etc.)

4. Was reported by civil authority? Yes ☒ No ☐   Agency Name: Edgartown Police Dept.   Investigating Officer:

5. Immediate Drug Screen Yes ☒ No ☐   5. a) Document reasons if drug screen not done:

6. Employee Involved: First Name: Adrian  Middle: John Christ  Last: – See attached  Male of Female

7. Home Address: Street:   City:   State:   Zip Code:   Home Phone #:

8. Date of Orig: 4/30/63  Date Hired:  Social Security Number: 07-66-6111  Job Title: MANAGER

9. Did injured leave work? Yes ☐ No ☐   Date:  Hour:  AM/PM
   Did injured return to work? Yes ☐ No ☐   Date:  Hour:  AM/PM

10. Was first aid administered? Yes ☐ No ☐   By whom?   Hospitalized? Yes ☐ No ☐

**INJURIES OR PROPERTY DAMAGE TO OTHERS**

11. Name: See attached

12. Address: Street:   City:   State:   Zip Code:   Phone #:

13. Describe injuries or property damaged:

**MANAGER INVESTIGATION RESULTS:**

14. a) Provide your description of ALL DETAILS on how the occurrence happened, the extent of injuries, damage or loss. Identify other persons or companies involved. Attach additional pages if necessary. Be clear and specific.

See attached

b) Estimated cost of damages: $

c) What did the employee do or fail to do that contributed to the occurrence/accident?

d) What action have or will be taken to prevent recurrence? (i.e., verbal or written counseling, safety training, installing safety devices, using proper safety equipment, additional training in proper procedures, repair, etc.). Include date these actions will take place.
   Action                                        Date

15. Witness(es) Name:   Address:   Day/Date Telephone: (    )

Report completed by:   Date:   Telephone:

EXHIBIT
F-1

On May 14 , 2002 at approximately 8:15 AM, John Child came into my office. I requested to speak with him regarding a customer complaint in reference to John's demeanor while conducting a service call over the weekend. When he arrived at my office in the Daniele & Rogers building, I requested that my Office Manager be present during the conversation.

I started by asking John if he remembered going on a service call at the Carroll residence in Oak Bluffs on Saturday. He said he did. I asked him several questions regarding Mrs. Carroll's complaint. He denied all of the allegations. At this time I informed John that his employment with the company is herby suspended until a complete review of the incident in question is conducted. I also asked him for his pager, keys to the buildings and company vehicle.

It was then that John smiled at me, gave me a "thumbs up" gesture and walked out of my office . I called his name several times and said I need the keys etc. John left the building and walked across the street to Vineyard Propane. Not sure what his state of mind or intentions were I followed. I could see that his company vehicle was parked in the rear parking area and he was walking toward it. I proceeded across the street asking John to wait for me, as he was approximately fifty feet ahead of me. He ignored me and kept walking.
He approached the company vehicle and opened the driver's door and got in the truck. As he was doing this I told him that he was not authorized to take the company vehicle and not to take it. At this point I was still walking toward the vehicle and was approximately three fourths of the way along side of the Vineyard Propane building (see drawing) and approximately twenty feet from the truck.

John started the truck, looked at me and smiled, placed the vehicle in gear, stepped on the accelerator and steered the truck directly at me and continued to accelerate. I tried to get out of the way however due to the area I was standing there was nowhere for me to go. John then struck me with the truck. As he approached I tried to get as close to the building as possible. I put my arms up to protect my head and facial area, as I knew I would be struck by the driver's side mirror. As a result, my right arm and elbow were struck by the driver's side mirror causing damage to the truck. As I rolled, the right side of my lower back struck the door handle. I had lost my balance and held onto the mirror assembly in an attempt to keep my feet and legs from becoming caught under the vehicle. During this time I was yelling at John to stop, but he refused. John continued to drive the truck as close to the building as possible while "pinning" me between the building and the truck during the entire length of the building, which is approximately sixty feet in length. When John reached the end of the building and the front parking area he stopped the truck.

I told John several times that I was going to call the police. I also motioned to Lynn Daniels who was standing in the front office to come outside, as I wanted her to call the police department. It was unclear as to what he may do with the vehicle and my concern for others safety I remained outside. At that time John placed the truck in gear again and drove to the rear parking area. I walked to the rear lot and he stopped and exited the truck. He walked directly toward me in an aggressive nature. I noticed that he was carrying the company cell phone in his hand. As he approached me I told him I was calling the police and reached for the cell phone.

John pulled away then struck me in the left side of my face with his fist. At this point I started walking backward to get away from him. He continued to advance on me and swing. He struck me in the face several times and head. In an effort to protect myself from his advancements. I responded in self-defense and struck him to slow him down. He continued to strike me while I was trying to hold him down and get the attention of some of the employees that were inside the building. John then went inside the building, as did I and called the authorities.



EXHIBIT

1-2



Vineyard Propane

Daniele : Rogers

EXHIBIT
A-3



May 17, 2002

Mr. John Child
17 Mariner Rd
Vineyard Haven, MA  02568

Dear Mr. Child:

On May 14, 2002, you were placed on suspension pending an investigation into a complaint made against you by one of our customers.  Your insubordination towards your manager when he requested that you return all company keys, cell phone, and other company property while on suspension is unacceptable.  Your behavior in operating a company vehicle following your suspension and after being told not to do so, as well as the resulting intentional property damage you caused to the vehicle, also are clear violations of the company's standards of conduct.

Cornerstone Propane does not tolerate and will not tolerate the type of conduct you exhibited on May 14.  Therefore, the decision has been made to terminate your employment effective May 14, 2002.

Sincerely,

*Danny Fuller, by DT*

Danny J. Fuller
Director of Human Resources
CornerStone Propane

DJF/dit

EXHIBIT

1

| CRIMINAL DOCKET | DOCKET NO. 0235CR000387 | ATTORNEY NAME  Lanhosh |
|---|---|---|

| COURT DIVISION Edgartown | ☐ INTERPRETER REQUIRED | DATE and JUDGE | DOCKET ENTRY |
|---|---|---|---|

NAME, ADDRESS AND ZIP CODE OF DEFENDANT

TURCOTTE, ADRIEN
PO BOX 729
VINEYARD HAVEN, MA 02568

DEFT. DOB AND SEX
04/30/1963    M

DATE OF OFFENSE(S)
05/14/2002

PLACE OF OFFENSE(S)
EDGARTOWN

COMPLAINANT

POLICE DEPARTMENT (if applicable)
EDGARTOWN PD

DATE OF COMPLAINT
05/29/2002

RETURN DATE AND TIME
06/28/2002 08:30:00

Docket entry column (right side):
- ☐ Attorney appointed SJC R. 3:10)
- ☐ Atty denied and Defendant Advised per 211D §2A
- ☐ Waiver of counsel found after colloquy
- Terms of release set:
  - ☐ PR  ☐ Bail:
  - ☐ Held (276 §58A)
  - ☐ See back for special conditions
- Arraigned and advised:
  - ☐ Potential of bail revocation (276 §58)
  - ☐ Right to bail review 276 §58)
  - ☐ Right to drug exam 111E §10)
- ☐ Advised of right to jury trial  9-12-02  Macy
  - ☐ Does not waive
  - ☑ Waiver of jury trial found after colloquy
- ☐ Advised of trial rights as pro se (Supp. R. 4)
- ☐ Advised of right of appeal to Appeals Ct (R. 28)

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| 1.  265/13A/B  A&B c265 §13A | | | | | 50  ☐ WAIVED |

DISPOSITION DATE and JUDGE
9-12-02  Macy

SENTENCE OR OTHER DISPOSITION
☑ Sufficient facts found but continued without guilty finding until:  9-12-03
☐ Probation          ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
    ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged
JUDGE ___  DATE ___

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

DISPOSITION DATE and JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation          ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
    ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged
JUDGE ___  DATE ___

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

DISPOSITION DATE and JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation          ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
    ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged
JUDGE ___  DATE ___

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | VW ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

DISPOSITION DATE and JUDGE

SENTENCE OR OTHER DISPOSITION
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation          ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.  ☐ Request of Victim
    ☐ Request of Deft  ☐ Failure to prosecute  ☐ Other:
☐ Filed with Deft's consent  ☐ Nolle Prosequi  ☐ Decriminalized (277 §70C)

DISPOSITION METHOD
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

FINDING
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

FINAL DISPOSITION
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged
JUDGE ___  DATE ___

A True Copy Attest
Thomas A. Teller
Clerk (277 §70C)

A TRUE COPY  X  CLERK-MAGISTRATE/ASST. CLERK  ON (DATE)

COURT ADDRESS
Edgartown District Court
81 Main Street
P.O. Box 1284 Edgartown, MA 02539

EXHIBIT
G-1

| TENDER OF PLEA OR ADMISSION WAIVER OF RIGHTS | DOCKET NO. 02-387 | | NO. OF COUNTS 1 | Trial Court of Massachusetts District Court Department |
|---|---|---|---|---|
| INSTRUCTIONS: This form must be typed or printed clearly, completed prior to the Pretrial Hearing, signed by both counsel and submitted to the court by the defendant at or before the Pretrial Hearing. | NAME OF DEFENDANT Adrien Turcotte | | | COURT DIVISION Edgartown District Court Main St. · P.O. Box 1284 Edgartown, MA 02539 |

**SECTION I.** TENDER OF PLEA

Defendant in this case hereby tenders the following: PLEA OF GUILTY ☐ ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GU ☒ conditioned on the dispositional terms indicated below. *Include all proposed terms (guilty finding, finding of sufficient facts, continued without fir dismissal, fine, costs, probation period and supervision terms, restitution amount including the identification of the recipient of restitution, an sentence of incarceration, split sentence or suspended sentence, etc.). Number each count and specify terms for each count separately.*

| COUNT NO. | DEFENDANT'S DISPOSITIONAL TERMS (Check "Yes" if Prosecution agrees – Check "No" if Prosecution disagrees) | | PROSECUTOR'S RECOMMENDATION (Required if Prosecutor disagrees with terms) |
|---|---|---|---|
| 1 | CWOF 1 year - Admin. Probation /$200 CC  $50 VWF | YES ☒ / NO ☐ | Transfer Probation |
| | To be dismissed at end of 1 year. | YES ☐ / NO ☐ | |
| | | YES ☐ / NO ☐ | |
| | | YES ☐ / NO ☐ | |
| | | YES ☐ / NO ☐ | |
| | | YES ☐ / NO ☐ | |

WE HAVE CONSULTED WITH THE PROBATION DEPARTMENT REGARDING ANY PROBATION TERMS SET FORTH ABOVE.

| SIGNATURE OF DEFENSE COUNSEL X | DATE 9/12/02 | SIGNATURE OF PROSECUTING OFFICER | DATE 9/12 |
|---|---|---|---|

**SECTION II.** PLEA OR ADMISSION ACCEPTED BY THE COURT

The Court ☒ ACCEPTS the tendered Plea or Admission on defendant's terms set forth in Section I, and will impose sentence in accord with said terms, subject to submission of defendant's written WAIVER (see Section IV on reverse of this form), completion of the require COLLOQUY, a determination that there is a FACTUAL BASIS for the Plea or Admission, and notice of ALIEN RIGHTS.

**SECTION III.** PLEA OR ADMISSION REJECTED BY THE COURT

The Court ☐ REJECTS the defendant's dispositional terms set forth above and, in accordance with Mass. R. Crim. P. 12(c)(6), has set forth to the defendant the dispositional terms it would find acceptable, to wit:

**DEFENDANT'S DECISION IF COURT REJECTS TENDER PLEA OR ADMISSION:**

— Defendant WITHDRAWS the tendered Plea or Admis the parties must complete and file a Pretrial Confer Report, a Pretrial Hearing must be conducted and a date scheduled, if necessary.

— Defendant ACCEPTS terms set forth by the Court, a Pl Admission will be accepted by the court and dispositional terms imposed, subject to submission defendant's written WAIVER (see Section IV on rever this form), completion of the required COLLOQU determination that there is a FACTUAL BASIS for the or Admission, and notice of ALIEN RIGHTS.

| SIGNATURE OF JUDGE ACCEPTING OR REJECTING PLEA OR ADMISSION | DATE | SIGNATURE OF DEFENSE COUNSEL (if re |
|---|---|---|

EXHIBIT
C-2

SECTION IV    DEFENDANT'S WAIVER OF RIGHTS (G.L. c. 278, § 18) & ALIEN RIGHTS NOTICE (G.L. c. 278, § 29D)

1. The undersigned defendant, understand and acknowledge that I am voluntarily giving up the right to be tried by jury or a judge without a jury on these charges.

I have discussed my constitutional and other rights with my attorney. I understand that the jury could consist of jurors chosen at random from the community, and that I could participate in selecting those jurors, who would determine unanimously whether I was guilty or not guilty. I understand that by entering my plea of guilty or admission, I will also giving up my right to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to testify, or provide evidence against myself or asserting my privilege against self-incrimination; all with the assistance of my defense attorney; and to be presumed innocent until proven guilty by the prosecution beyond reasonable doubt.

I am aware of the nature and elements of the charge or charges to which I am entering my guilty plea or admission. I am also aware of the nature and range of the possible sentence or sentences.

My guilty plea or admission is not the result of force or threats. It is not the result of assurances or promises, other than any agreed-upon recommendation by the prosecution, as set forth in Section I of this form. I have decided to plead guilty, or admit to sufficient facts, voluntarily and freely.

I am not now under the influence of any drug, medication, liquor or other substance that would impair my ability to fully understand the constitutional and statutory rights that I am waiving when I plead guilty, or admit to sufficient facts to support a finding of guilty.

I understand that if I am not a citizen of the United States, conviction of this offense may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF DEFENDANT | DATE |
| --- | --- |
| X | 9-12-02 |

SECTION V    DEFENSE COUNSEL'S CERTIFICATE (INTERPRETER)

As required by G.L. c. 278, § 29A, I certify that as legal counsel to the defendant in this case, I have explained to the defendant the above-stated provisions of law regarding the defendant's waiver of jury trial and other rights, and advised the defendant to tender his or her plea of guilty or admission knowingly, intelligently and voluntarily.

| SIGNATURE OF DEFENSE COUNSEL | B.B.O. NO. | DATE |
| --- | --- | --- |
| | 639569 | 9/12/02 |

SECTION VI    JUDGE'S CERTIFICATE

I, the undersigned Justice of the District Court, addressed the defendant directly in open court. I made appropriate inquiry into the education and background of the defendant and am satisfied that he or she fully understands all of his or rights as set forth in Section IV of this form, and that he or she is not under the influence of any drug, medication, liquor or other substance that would impair his or her ability to fully understand those rights. I find, after an oral colloquy with the defendant, that the defendant has knowingly, intelligently and voluntarily waived all of his or her rights as explained fully in these proceedings and as set forth in this form.

After a hearing, I have found a factual basis for the charge(s) to which the defendant is pleading guilty or admitting facts to, or that the facts as related by the prosecution and admitted by the defendant would support a finding on the charges to which the plea or admission is made.

Further I certify that the defendant was informed and advised that if he or she is not a citizen of the United States, a conviction of the offense with which he or she was charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

| SIGNATURE OF JUDGE | DATE |
| --- | --- |
| X | |

EXHIBIT
C-3

(3)

(TO PLAINTIFF'S ATTORNEY:)     PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER.)

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT
CIVIL ACTION
No. DUCV 005-10029

Dukes County, ss.

_John W. Child_ (Plaintiff(s))

_Adrien R. Turcotte_ v. and _Titan Propane LLC d/b/a Vineyard Propane_ (Defendant(s))

*(left margin, rotated):* you need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _T. George Davis, Jr._ plaintiff's attorney, whose address is _P.O. Box 1150, Vineyard Haven, MA 02568_, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Edgartown, the _Second (2nd)_ day of _August_, in the year of our Lord two thousand and _2005_

A True Copy,
Attest:

*Joseph E. Sollitto Jr.*    *(signature)*

JOSEPH E. SOLLITTO, JR.    Clerk of Courts
CLERK OF COURTS

25
2005

NOTES.
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

## OFFICE OF THE SHERIFF, WICOMICO COUNTY, MARYLAND
## SHERIFF'S RETURN OF SERVICE

August 9, 2005                                          03:28:32 PM
=====================================================================
STATE OF MARYLAND   )              Sheriff's No.NEOS  -05006820-001
                    ) ss
COUNTY OF WICOMCIO  )              Cause No. DUCV2005-00029
=====================================================================
                    JOHN W CHILD
                          VS.
                    ADRIEN TURCOTTE

Received From:        DAVIS JR, T GEORGE
=====================================================================
I, R. Hunter Nelms, Sheriff in and for said County and State, do
hereby certify that I have received the annexed:
                    OUT OF STATE PAPER


=====================================================================
        On Wednesday, August 3rd, 2005 and that I served the same on
           Tuesday, August 9th, 2005  at 3:30 PM,
   within the County of Wicomico   , Maryland  , as follows on:

Party to be served:   .
Person actually served: TURCOTTE, ADRIEN  ()
=====================================================================
subject now lives at 7218 Rockawalkin Rd.



=====================================================================
Address Served:  401 NAYLOR MILL RD--WCSD,   SALISBURY, MD  21804

Served By:    THOMPSEN, JOSEPH Sgt.         (Deputy/Server

=====================================================================
    SHERIFF'S FEES
SERVICE FEE        50.00         R. HUNTER NELMS, SHERIFF
TOTAL FEES         50.00         WICOMICO COUNTY, MARYLAND

                                 BY
                                 Sheriff of Wicomico County

(4)

(TO PLAINTIFF'S ATTORNEY:                PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
                                         TORT — MOTOR VEHICLE TORT — CONTRACT —
                                              EQUITABLE RELIEF — OTHER.)

COMMONWEALTH OF MASSACHUSETTS

Dukes County, ss.                        DEPARTMENT OF THE TRIAL COURT
                                         SUPERIOR COURT
                                         CIVIL ACTION
                                         No. DUCV 2005-
                                                  00029

John W. Child
_____ (Plaintiff(s)

Adrien R. Turcotte and Titan Propane LLC
d/b/a Vineyard Propane_____, (Defendant(s)

SUMMONS

To the above-named Defendant:

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer, within 20 days as specified herein and also file the original in the Clerk's office.

You are hereby summoned and required to serve upon T. George Davis, Jr._____ plaintiff's attorney, whose address is P.O. Box 1150, Vineyard Haven, MA 02568 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Edgartown either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Edgartown, the Second (2nd)_____ day of August_____, in the year of our Lord two thousand_____ and 2005_____

A True Copy,
Attest:

*Joseph E. Sollitto Jr.*

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS


_____
Clerk of Courts

25
9005

NOTES.
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.



COMMONWEALTH OF MASSACHUSETTS
Dukes, ss.                                    Superior Court Department

*******************************
                                *
JOHN W. CHILD,                  *
        Plaintiff               *
                                *    Civil Action No. DUCV2005-00029
v.                              *
                                *
ADRIEN TURCOTTE, et al.,        *
        Defendants              *
                                *
*******************************

### REQUEST TO ENLARGE TIME FOR RESPONDING TO THE PLAINTIFF'S COMPLAINT

Pursuant to Mass.R.Civ.P. 6(b), the Defendant, Adrien Turcotte, requests that the

Court enlarge the time for filing an initial pleading or otherwise responding to the

Plaintiff's complaint until September 16, 2005. In support of this request, the Defendant

states that:

1.    Defendant Turcotte was served with the summons and complaint on
      August 5, 2005.

2.    The Defendant requests the enlargement in order to formulate an
      appropriate response to the Plaintiff's allegations.

3.    Counsel for the Plaintiff has consented to extending the time for filing an
      initial pleading or otherwise responding to the complaint until September
      16, 2005.

*(handwritten signature)*

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

A True Copy,

Attest:

*(left margin handwritten)* 9/6/05 Allowed Connolly, J. PF Bonito-Suranovy Asst. Clerk

**FILED**
SUPERIOR COURT
COUNTY OF DUKES COU
SEP 0 2 RECD
2005
Clerk

4.    By filing this request, the Defendant does not waive any affirmative

defense, including its right to contest and deny this Court's power to exert

personal jurisdiction over the Defendant.

Respectfully submitted
BY ADRIEN TURCOTTE
By his Attorney

Norman Holtz, BBO# 238880
HOLTZ & REED, LLP.
25 New Chardon Street
Boston, MA 02114
(617) 720-0501

Dated:_____August 30, 2005_____

ASSENTED TO:
JOHN W. CHILD, JR.,
By his Attorney

T. George Davis, Jr., BBO# 646667
P.O. Box 1150
Vineyard Haven, MA 02568

Dated:_____

2

FROM : LAW OFFICE OF T. GEORGE DAVIS    Case 1:05-cv-11084-NMG    Document 28-69 Filed 10/11/2005    Aug. 31 2005 11:25A    Page 60 of 64    P2

08-30-'05 13:46  FROM-Holtz & Reed LLP    1-617-720-0502    T-352  P004/205 F-789

4.    By filing this request, the Defendant does not waive any affirmative

defense, including its right to contest and deny this Court's power to exer:

personal jurisdiction over the Defendant.

> Respectfully submitted
> BY ADRIEN TURCOTTE
> By his Attorney
>
>
> Norman Holtz, BBO# 238880
> HOLTZ & REED, LLP.
> 25 New Chardon Street
> Boston, MA 02114
> (617) 720-0501

Dated: _August 30, 2005_

> ASSENTED TO:
> JOHN W. CHILD, JR.,
> By his Attorney
>
>
> T. George Davis, Jr., BBO# 646667
> P.O. Box 1130
> Vineyard Haven, MA 02568

Dated: _August 31, 2005_

## CERTIFICATE OF SERVICE

I hereby certify that a copy of said Request has been served upon Attorney for Defendant Titan Propane, Stephen Zamansky, 500 Meijer Drive, Suite 200, Florence, Kentucky 41042, by first-class mail, postage prepaid.

Norman Holtz

Dated: 8/31/2005

motexttime

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN W. CHILD,
    Plaintiff

    Case No. _____

v.

TITAN PROPANE LLC and
ADRIEN R. TURCOTTE,
    Defendants

    (Docketed at the Dukes
    County Superior Court,
    Commonwealth of Mass.
    as DUCV2005-00026

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendant Adrien R.

Turcotte files this notice to remove a civil action from the Superior Court

Department of the Trial Court, Dukes County, Commonwealth of Massachusetts,

to the United States District Court for the District of Massachusetts. In support of

this notice, defendant states:

    1.)    Plaintiff John Child has commenced a civil action against

           defendants Adrien R. Turcotte and Titan Propane LLC ("Titan

           Propane") in the Superior Court Department of the Trial Court,

           Dukes County, Commonwealth of Massachusetts.

    2.)    Process was served on defendant Turcotte on August 4, 2005.

           Turcotte became aware of the matter upon being served. Upon

           information and belief, process was served on defendant Titan

           Propane on August 5, 2005. Upon information and belief,

           Titan Propane became aware of the matter upon being served.

FILED
SUPERIOR COURT
COUNTY OF DUKES COUN
SEP 0 9 REC'D

_____ , Clerk
A True Copy,
Attest:

*Joseph E. Sollitto Jr.*

JOSEPH E. SOLLITTO, JR.
CLERK OF COURTS

3.)   Plaintiff's amended complaint consists of several tort counts (e.g., assault and battery and intentional infliction of emotional distress). Upon information and belief, plaintiff's civil action cover sheet indicates that he seeks $288,000 in damages.[1]

4.)   Plaintiff is a resident of the State of Massachusetts.

5.)   Defendant Turcotte is an individual and a resident of the State of Maryland.

6.)   Defendant Titan Propane is a foreign limited liability company, formed under the laws of the State of Delaware and with its principal place of business in the State of Kentucky.

7.)   Because this is a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, this court has subject matter jurisdiction over the dispute by reason of 28 U.S.C. § 1332. The action may be removed to this Court pursuant to 28 U.S.C. § 1441.

8.)   Copies of the process, pleadings, and other papers served upon the defendant are attached.

9.)   By filing this notice of removal, defendant does not waive any defense which may be available to it.

WHEREFORE, defendant respectfully gives notice that plaintiff's action filed in the Superior Court Department of the Trial Court, Dukes County,

---

[1] Upon information and belief, plaintiff filed his original complaint with the state court in May 2005. Turcotte was the only defendant named in the original complaint. The original complaint was not served on Turcotte and, upon information and belief, neither defendant became aware of the original complaint until after the amended complaint had been served on them. The civil action cover sheet referenced in paragraph three above was filed with the original complaint.

2

Commonwealth of Massachusetts, and docketed as DUCV2005-00029 has been

removed.

Respectfully submitted,
Adrien R. Turcotte,
By his attorneys,

Norman Holtz, BBO# 238880
HOLTZ & REED, LLC
25 New Chardon Street
Boston, MA 02114
Dated:  9/1/2005    (617) 720-0501

## CONSENT TO REMOVAL

Titan Propane LLC hereby consents to the removal of this action.

Titan Propane LLC,

Dated: 8/30/05

DAVID C. Riggan

## Certificate of Service

Undersigned certifies that a true copy of the above document was
served upon counsel for Plaintiff John W. Child, T. George Davis,
Jr., P.O. Box 1150, Vineyard Haven, MA 02568, by first-class mail,
postage prepaid.

Dated:
9/2/2005

3